60 N.J. Super. 524 (1960)
159 A.2d 443
BLOOMFIELD SAVINGS BANK, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
HOWARD S. STAINTON AND CO., A NEW JERSEY CORPORATION, AND HOWARD S. STAINTON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 1960.
Decided April 5, 1960.
*525 Before Judges PRICE, GAULKIN and FOLEY.
Mr. Joel A. Mott, Jr., argued the cause for defendants-appellants (Mr. French B. Loveland, attorney).
Mr. Harold J. Brown argued the cause for plaintiff-respondent (Messrs. Joyce and Brown, attorneys).
The opinion of the court was delivered by PRICE, S.J.A.D.
By this appeal defendants seek to reverse a summary judgment in favor of plaintiff in a real estate mortgage foreclosure action in the Superior Court, Chancery Division. In addition, defendants contend that the court erroneously denied their motion for a summary judgment on their counterclaim. The crux of the dispute centers in the legal propriety of defendants' claim (rejected by plaintiff) that they had the right at any time to pay the entire principal of $60,000 and accrued interest on their bond held by plaintiff, without penalty for prepayment, thereby discharging their indebtedness to plaintiff and entitling them to a cancellation of the mortgage securing said debt. Following rejection of their claim, and subsequent tender pursuant thereto, defendants refused to pay further monthly installments in accordance with said bond. Thereupon *526 plaintiff's suit (described in its brief as "a partial foreclosure" under N.J.S. 2A:50:39 et seq.) was instituted.
The factual situation disclosed by the record was that on April 13, 1959, Haag, Inc., Herman Haag, Adolph Haag and Eugene Haag executed a bond to plaintiff in the sum of $60,000, secured by a mortgage bearing even date therewith. The mortgage was signed by Haag, Inc., and covered certain real property therein described. The bond called for the periodic payments of taxes, other municipal charges and hazard insurance premiums referable to the property "described in the mortgage accompanying" the bond.
The aforesaid bond required the obligors to pay the principal sum of $60,000 "with lawful interest for the same," to be computed from the date thereof at the rate of 6% per annum, "the said principal and interest to be paid in monthly installments of * * * $666.14 commencing on the first day of June, 1959, and payable on the first day of each month thereafter until the principal and interest are fully paid, except that the final payment of principal and interest if not sooner paid shall be due and payable on the first day of April, 1969 * * *." (Emphasis supplied.) The bond contained no specific prepayment provision and, apart from the aforesaid phrase "if not sooner paid," provided without qualification for the periodic installment payments of principal and interest over the aforesaid ten-year span.
On July 15, 1959 Haag, Inc., defendant Howard S. Stainton and Co., and plaintiff entered into a tripartite "assumption agreement." The agreement recited that Haag, Inc. had sold the aforesaid real property to Howard S. Stainton and Co., "subject to the aforementioned mortgage" and that the said corporations had requested plaintiff to release the obligors on the bond "from all further liability on account" thereof. Expressing as part of the consideration the contemporaneous "delivery of a covenant," under which plaintiff promised it would not sue Haag, Inc., the agreement contained an undertaking by Howard S. Stainton and Co. "to assume and pay the indebtedness secured by said bond and mortgage, including *527 interest at the rate set forth in the said bond and mortgage, in accordance with the terms thereof * * *." Howard S. Stainton and Co. also therein covenanted "to execute another bond" to plaintiff "in the same amount and terms" as were contained in the aforesaid bond executed by Haag, Inc., et als. on April 13, 1959. Plaintiff, in turn, agreed "to the assumption of said mortgage" by Howard S. Stainton and Co. and further covenanted "not to exercise its option, under paragraph 8 of said mortgage, to demand payment of the entire principal and interest thereon, because of the sale of the land and premises covered by said mortgage."
Pursuant to the assumption agreement, Howard S. Stainton and Co. and, in addition, Howard S. Stainton, individually, on July 15, 1959 executed a bond to plaintiff in the sum of $60,000 providing for monthly installment payments similar to those contained in the former bond, with the specification that the initial installment payment was to be made on August 1, 1959.
On or about September 1, 1959, defendants requested that plaintiff furnish to the Chelsea Title & Guaranty Co. of Atlantic City a "pay-off statement" showing the full amount due it. Under date of September 8, 1959 plaintiff furnished such a statement which included a "prepayment penalty" of $1,800, demanded by it as a condition of its discharge of defendants' aforesaid indebtedness and the cancellation of said mortgage. Defendants by letter dated September 22, 1959 asserted that plaintiff had no right to the $1,800 payment and asked that a new statement, omitting that item, be issued to the aforesaid Guaranty Company. On September 25, 1959 plaintiff in a letter to the corporate obligor reasserted the correctness of its aforesaid "pay-off statement" and noted that "under the terms of the Bond and Mortgage you do not have the right to prepay the balance due."
On October 1, 1959 defendants' attorney, by letter, acknowledged plaintiff's last mentioned communication and, placing emphasis on the aforesaid phrase that "the final *528 payment of principal and interest, if not sooner paid, shall be due and payable on the first day of April, 1969," stated that the "prepayment penalty in the amount of $1800 * * * is an endeavor to collect by duress an unlawful penalty which is tantamount to usury." The letter designated October 8, 1959 at 10:30 A.M. at the office of the aforesaid Guaranty Company as the time and place when and where the writer's "client will be in a position to make tender of the total amount of principal and interest currently due and owing under said mortgage without regard to any penalties." The letter closed with the statement by the writer that if plaintiff failed to "comply with this demand * * * I shall deposit into Court the monies lawfully due and owing to you with the attendant publicity." Plaintiff did not honor the notice to appear on October 8 to receive the payment by defendants and retained the bond and mortgage.
Under date of November 5, 1959 plaintiff's attorney in a letter to defendants' attorney in response to a communication from the latter dated November 3, 1959 (not printed in the appendix) listed "arrears" on the indebtedness, including a reference to sheriff's fees and legal fees incident to the foreclosure action, which by that time had been instituted, and further itemized the amounts required to discharge the mortgage. This latter statement again included the $1,800 payment and added a sum for estimated foreclosure expense.
The answer filed by defendants admitted that they had not paid the aforesaid installments which fell due on the first days of June to October, 1959, inclusive, but denied that default was made in the September and October payments, and asserted that their offer to "pay the lawful amount of the obligation due the plaintiff" was refused. They admitted "that said mortgage provided for a `late charge' not to exceed an amount equal to 4% of any installment" not paid within 15 days from the due date, but denied that any "charge" was due for the installments "alleged after September 1, 1959 by reason of the refusal *529 of the plaintiff to accept defendants' tender * * *." Affirmative defenses included an allegation that plaintiff "has used unlawful duress in an attempt to exact a prepayment penalty which is tantamount to usury."
By way of counterclaim defendants, reserving "the right to make a deposit into court of the full lawful amount of the indebtedness," reasserted their readiness and willingness so to do. They asked that it be adjudged that "plaintiff has attempted by duress to exact a penalty tantamount to usury"; that the true amount due to plaintiff be determined and that plaintiff be directed to "cancel said mortgage of record upon payment of the full amount due as determined by the court."
Based on a finding that installments of mortgage principal ($2,936.98) plus interest ($1,726) and "late charges" ($205.20) were due to plaintiff, the trial court, as above stated, granted plaintiff's motion for a summary judgment and denied a comparable motion by defendants for a judgment on their counterclaim. The judgment determined that plaintiff was entitled to have the total sum of $4,868.18, with interest from December 1, 1959 and costs including a counsel fee, "raised and paid out of the equity of the defendants in the mortgaged premises * * *." Holding that plaintiff was entitled to maintain a "partial" foreclosure action, the court further directed that ("subject to the balance of the principal sum remaining due upon the plaintiff's said bond and mortgage * * *") the said mortgaged premises, "or so much thereof as will be sufficient to raise and satisfy the said installments of principal, interest and charges as aforesaid and costs * * *," be sold; that execution issue commanding the sheriff to make sale "of so much of the said mortgaged premises as will be sufficient to satisfy the amounts aforesaid and to pay the same from the proceeds of the sale to the plaintiff or its attorney, the sale of said premises to be specifically made subject to the lien of plaintiff's said mortgage in the full principal sum remaining due thereon amounting to $57,063.02, being the *530 balance owing for principal, together with interest to accrue thereon from December 1, 1959 to be paid in monthly installments as provided in said bond and mortgage * * *."
In challenging the trial court's action, granting a summary judgment in favor of plaintiff, defendants contend that, although there is no specific prepayment provision in the bond or mortgage, two clauses therein justify their claim that they are entitled to have their indebtedness cancelled without exaction of any "penalty," on payment in accordance with their aforesaid tender. There is no dispute between the parties that the issue presented by this appeal must be determined by the instruments executed by the parties, i.e., the assumption agreement, the defendants' personal bond and the mortgage assumed by the corporate defendant.
Defendants in their brief point specifically to the bond in which, immediately after the clause obligating defendants to make payment of $60,000 plus interest by monthly installments of $666.14 commencing August 1, 1959, the following appears:
"* * * and payable on the first day of each month thereafter until the principal and interest are fully paid, except that the final payment of principal and interest if not sooner paid shall be due and payable on the first day of April, 1969, the aforesaid monthly payments are to be applied first, to the payment of interest on all unpaid balances of said principal sum as aforesaid, and second, the balance of said monthly payments shall be applied towards the reduction of said remaining unpaid principal sum until the same is paid in full * * *."
Defendants also stress the same words, "if not sooner paid," appearing in a comparable place in the assumed mortgage. They contend that by the use of those words "it becomes apparent" that "plaintiff anticipated the possibility of payment of the obligation before April, 1969" and that where ambiguity exists the words will be construed most strongly against the party "preparing" the instrument or "employing the words concerning which doubt arises." There is no proof before us as to the identity of the scrivener of *531 the instruments under scrutiny. Moreover, we do not attach the same significance to the phrase "if not sooner paid" which defendants do. They state that, because of the words it is "apparent" that plaintiff anticipated the possibility of a payment of the obligation before April, 1969. The phrase is a usual one found in direct reduction mortgages and its use does not, in itself, create at a mortgagor's sole option the right to accelerate the installment payments. Its common meaning, where unamplified by other terms or provisions, contemplates a situation in which, at the request of the mortgagor, the mortgagee, at its option, may permit the acceleration of payments, thus with its consent shortening the life span of the debt. There is no justification for defendants' contention that the use of the quoted phrase justifies the conclusion that they may pay this mortgage with the same freedom from any "penalty" as if the mortgage were not payable by installments over a period of years. Here they assert that, having on July 15, 1959 assumed the mortgage, dated April 13, 1959, with the first payment under their substituted bond due August 1, 1959, they can, as of September 1, 1959, force the plaintiff against its will to accept the $60,000 and forego the interest which at the rate of 6% it would otherwise receive over the life of the mortgage.
Defendants' contention that a prepayment privilege was, as stated in their brief, an "expressed condition of the obligation" is not borne out by the facts. Moreover, it is not correct, as further asserted in their brief, that the demand by plaintiff can be labelled as an "attempt of the mortgagee to receive in consideration for his loan an amount in excess of the legal rate of interest, be the same called bonus, premium, or prepayment penalty * * *." The plaintiff's action is not an attempt, as alleged by defendants, to "exact a non-contractual prepayment penalty for the cancellation of the mortgage" constituting "duress tantamount to usury * * *." It is merely the exercise of a right to demand a consideration for its acceptance of a request by defendants *532 for prepayment for which no specific provision existed. For such requested action it had a separate contractual right to require the aforesaid payment "for surrendering the privilege of having its funds invested, and of collecting interest thereon for the term provided in the contract * * *." Annotation, 130 A.L.R. 73, 78-79 (II(b)(2)).
We deem it significant, and in refutation of defendants' assertion that they had the absolute and unconditional right to pay the full amount of the bond at any time and secure the contemporaneous cancellation of the mortgage, that in each of the aforesaid bonds is a clause that "the Obligee may waive the requirements of the whole or any part of the Agreement contained in this paragraph." The paragraph to which reference is made is the one which specifies in detail the installment method of payment over the succeeding years. Implicit in the provision that the obligee might waive any of the said requirements is the fact that, in the absence of such waiver, the obligors were bound to adhere thereto. It is perfectly plain that both parties were bound by the installment provisions of the bond. Plaintiff could not force earlier payment over defendants' resistance. Defendants could not compel plaintiff to accept payment other than as provided therein. If defendants desired for any reason to depart from the terms of the bond and pay the obligation before maturity they could do so only with the plaintiff's consent. Defendants' assertion that the plaintiff's demand is tantamount to usury is totally without justification.
Defendants' brief contains the statement that even assuming that the final payment of principal prior to April 1, 1969 was not contemplated, "still the defendants had the right to pay off the debt regardless of the consent of plaintiff, there being nothing in the agreement to the contrary." In support of this thesis they cite Tiernan v. Carasaljo Pines, 51 N.J. Super. 393 (App. Div. 1958). The court there held that the debtor "possessed the right to pay off the debt, regardless of the consent of the plaintiffs, there being nothing in the agreement to the contrary" (51 N.J. Super., at *533 page 409), but that case has no factual similarity with the case at bar. In the instant case the contractual terms of payment were completely contrary to the course defendants desired to pursue.
In granting summary judgment in favor of plaintiff and denying defendants' motion for a summary judgment on its counterclaim the trial court said:
"Plaintiff instituted foreclosure proceedings for the delinquent payments only, not electing that the whole principal balance become due, and has now moved for summary judgment. * * *
The parties are bound by the contract as stated in the bond, mortgage and assumption agreement. Nothing therein contained gives the defendant the right to force plaintiff to accept prepayment. Plaintiff's offer to accept such payment upon the payment of an additional charge is neither usurious nor fraudulent."
We are in accord. The judgment is affirmed.