**UNITED STATES of America, Plaintiff,**

**v.**

**Thomas K. BILLS, M.D., Defendant.**

**Civ. No. 84–3808 (AET).**

United States District Court,
D. New Jersey.

March 19, 1986.

William S. Halsch, Asst. U.S. Atty., Newark, N.J. for plaintiff.

Gail R. Henningsen, Lenox, Giordano, Devlin, Delehey & Socey, Trenton, N.J., for defendant.

## OPINION

THOMPSON, District Judge.

This matter is presently before the court on a motion for summary judgment by the United States. The government seeks an order adjudging the defendant, Thomas K. Bills, M.D. and Ph.D., in breach of contract and imposing treble damages and interest arising from the alleged breach. Dr. Bills had been the recipient of scholarship funds under the National Health Service Corps ["NHSC"] Scholarship Program, 42 U.S.C. § 254$l$. The plaintiff alleges that the defendant failed to begin his service obligation under the program breaching the contract he signed with the government when he was awarded the scholarship.

Defendant opposes the motion for summary judgment and has filed his own motion for summary judgment and raises certain affirmative defenses. The defendant contends that the government's finding that he had defaulted in failing to begin obligated service was improper, arbitrary, capricious and unreasonable. Defendant further argues, even if he is found in breach of his contract with NHSC, the treble damages provision of 42 U.S.C. § 254$o$ should not be enforced in this particular

case and that any judgment requiring him to pay damages should be limited to the amount of money and aid he received under the program.

The scholarship program in which defendant participated was established by Congress in an attempt to provide primary health care services in medically underserved locations. We will not for purposes of this opinion set out the laudable purposes and goals of the program, nor its requirements, except when necessary for purposes of this opinion.

In 1978, while still a student at medical school, Dr. Bills applied for and was accepted into the NHSC Scholarship Program. Prior to completing the application for consideration Dr. Bills had the opportunity to review the Scholarship Program Applicant Information Bulletin which contained all the pertinent details of the program; including the obligations incurred by an applicant upon acceptance to the program. The material explained that the program's intent and focus was to alleviate and rectify the geographical and specialty maldistribution of physicians in the United States. The bulletin put the defendant on notice that participants in the program were to be those individuals who seriously wanted to practice primary care medicine in health manpower shortage areas of the United States.

The program provided for the payment of medical school tuition and a stipend to those individuals who were selected. In return for this financial assistance participants were to complete their academic training and provide a year of service in an assigned area for every year of financial assistance. This period of service could, under provisions of the program, be deferred to allow for some limited post-graduate training. However, these periods of deferment were restricted by statute; with the period of deferment not to exceed a period of three years unless the applicant came within certain specialized categories. Deferments of less than three years were available; however, the program required that participants undertaking a one-year

deferment complete a flexible first year of clinical training, a categorical first year of family practice, internal medicine, or pediatrics program or engage in a rotating internship in osteopathic medicine. These requirements were clearly set forth in the material signed by Dr. Bills in finalizing his application. These documents informed the defendant of the potential consequences which could result in the event the defendant did not fully comply with the service obligation of the program. The statute creating the program clearly provided that participants who failed to either begin or complete their service obligation would be required to repay the government three times the amount of funding provided to the participant while in medical school together with interest. *See* 42 U.S.C. 254*o* (b)(1).

The defendant, a Ph.D prior to entering medical school, submitted an application to the program wherein he stated that he did not intend to follow a research orientation in his career and that he intended to work in an urban setting where, as he stated, there was a need for primary medical care. The import of these statements on his application was that he intended to engage in a career of providing primary medical care in a medically underserved area. Based on these representations, Bills' application was given special consideration and he was accepted and awarded a NHSC scholarship. On April 5, 1978 defendant signed a contract with the NHSC which set forth both the benefits to which he was entitled and his corresponding obligations and duties. The contract clearly stated that Dr. Bills would be obligated to provide one year of service for every year of assistance received. The contract also clearly stated that deferments would not be granted for more than three years. This particular requirement was reiterated by government officials in subsequent correspondence directed to this particular defendant on various occasions. On June 22, 1979 the government notified Dr. Bills that deferments would only be granted to allow program participants to complete either a flexible one year residency program in certain

limited areas or a clinical residency program which could be completed within three years. It was incumbent on Dr. Bills to take into account and consider these requirements prior to making any specific post-graduate commitment.

On October 30, 1979, in defendant's last year of medical school, the same information was repeated by the government in a letter to the defendant. In this letter he was notified that even if he intended to fulfill his obligation to the NHSC by way of a National Research Service Award ["NRSA"], an option available to NHSC participants, he was still obligated to satisfy the eligibility requirements of the NHSC. This meant that any requested deferment by the defendant was limited to either the three years maximum or the one year flexible program. Defendant was advised that if he wanted to enter a surgical internship he was to pursue the one year flexible training program. This letter explicitly stated that deferments of more than three years would not be granted except in certain specialized areas in which the NHSC had a need. Defendant was informed prior to making any formal commitment to a post-graduate program that he was under the duty to pursue training which could be approved by the NHSC. Defendant was also put on notice in this letter that failure to comply with these conditions could result in the finding of breach and the imposition of treble damages.

On March 3, 1980 the NHSC again restated its requirements as to the procedure for obtaining deferments and set forth what post-graduate programs satisfied NHSC provisions. Defendant was also notified that in the event he requested a deferment for a program which could not be approved by the NHSC he would only be entitled to a flexible first year of clinical training deferment. He again was specifically told that he was to pursue training which could be approved by officials of the NHSC. Thus by March 1980 defendant had been adequately advised of the requirements of the NHSC program and what programs would be eligible for deferment and what was the maximum period of deferment available to him. At no point up to this time was there any indication that Dr. Bills was not aware of his duties and requirements under the program. Nor was there any evidence that prior to March 1980 defendant sought or obtained approval for any program not specifically provided for under the contract or notices mailed to him.

On March 3, 1980 defendant signed a contract with the Rutgers Medical School accepting a one year surgical residency. In the literature previously sent to Dr. Bills no allowances had been made for this type of post-graduate training. Dr. Bills subsequently wrote a letter to the NHSC on April 9, 1980 wherein he stated his intention, apparently for the first time, to enter a five year orthopedic surgical program at Rutgers and satisfy his NHSC obligation by way of NRSA award. In the materials previously sent to Dr. Bills no allowances had been made for this kind of program for NHSC participants.

On April 22, 1980 defendant was informed by the NHSC that his deferment request did not comply with the type of training for which deferments were available and that it exceeded the three year maximum. Defendant was told that he would be granted a one year deferment to complete a flexible or categorical training program in family practice, internal medicine or pediatrics as previously outlined to Dr. Bills in prior correspondence to him. As for his desire to satisfy his service obligation by way of a NRSA grant, defendant was reminded that under his contract he was obligated to satisfy the requirement that he be eligible to serve in the NHSC. On the NRSA issue the government remained otherwise non-commital. Defendant was also reminded that failure to satisfy NHSC standards would result in the imposition of financial liability in the amount of treble damages. This warning came on May 26, 1980, well before Dr. Bills commenced his training with Rutgers that summer. Dr. Bills then wrote to NHSC officials requesting a one year deferment, representing in his letter that his program

with Rutgers would qualify him to serve in the NHSC. At the time he wrote the letter to the NHSC his proposed Rutgers' program failed to adhere to the published specifications and requirements of the NHSC. On May 28, 1980 the government wrote to Dr. Bills informing him that it would not approve Dr. Bills' Rutgers' program unless he made provisions to include at least three months of primary care rotations in limited areas as set forth in their earlier correspondence. The defendant was advised that failure to meet this express condition could result in the imposition of the financial penalty. In November 1980 Dr. Bills was informed by the NHSC that he was not in compliance with the specifications of the program and was in danger of being declared in default.

In response to this letter Dr. Bills asserted that he had been led to believe that he was satisfying all the NHSC requirements. He claimed he was not aware of any primary care rotation requirement until it was too late to make an adjustment of his program. Bills also contended that his program satisfied NHSC standards. NHSC, in response to Bills' assertions elected to place him in default thereby triggering the damages provision of 42 U.S.C. § 254*o*.

The primary purpose of a motion for summary judgment is to avoid a useless trial. *Dworman v. Mayor and Bd. of Alderman of Morristown*, 370 F.Supp. 1056, 1063–64 (D.N.J.1974). To earn a summary decision, the moving party must merit judgment as a matter of law upon genuinely indisputable material facts. FED.R.CIV.P. 56(c), *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir.1978). The non-moving party is entitled to the benefit of all reasonable doubts and inferences drawn from the underlying facts. *Goodman v. Mead, Johnson & Co.*, 534 F.2d 566, 574 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

■ In this case it is clear that Dr. Bills entered into a valid and binding contract with the NHSC in 1978. This same contract was subsequently renewed by the parties in 1979. There is no contention that the formation of the contract in issue here was in any way improper or deficient. The contract, as entered into by the parties, is enforceable. Our task in this motion is to interpret the contract and determine whether or not its terms have been breached. In construing the contract in issue here we apply general contract law. *Priebe & Sons v. United States*, 332 U.S. 407, 411, 68 S.Ct. 123, 125–26, 92 L.Ed. 32 (1947). Under principles of contract law the construction and legal effect of an unambiguous writing is for the court and not for a jury. *County of Erie v. American States Insurance Co.*, 573 F.Supp. 479, 483 (W.D.Pa.1983), *aff'd* 745 F.2d 45 (3d Cir. 1984). Summary judgment may be entered in a case where the court is asked to construe contractual clauses that are clear and unambiguous despite the parties' differing views as to what consequences flow from those provisions. *Wagman v. Carmel*, 601 F.Supp. 1012, 1014 (E.D.Pa.1985).

■ The obligations of both sides as set forth in the contract are clear and unambiguous. The government, pursuant to the contract it had with the defendant, was under a duty to provide Bills with financial assistance, covering tuition, reasonable educational expenses and a personal stipend, while Dr. Bills was attending medical school. This assistance was provided to the defendant during his last two years of medical school. The government further obligated itself, under the contract, to defer Dr. Bills' period of obligated service in order to permit him to obtain post-graduate training. The contract, however, clearly stated in unequivocal language that such deferments would not be granted for more than three years. The terms as outlined here were contained in the original contract Dr. Bills executed in 1978 and was expressly incorporated in the extension signed by Dr. Bills in 1979. Defendant's explicit duty under the contract was to perform obligated service upon completion of his medical training, in an area designated by NHSC officials as a health manpower shortage area. It is quite clear and apparent that the government has satisfied all its obli-

gations under the contract and discharged its duties. It is also quite clear that defendant, in accordance with the express and unambiguous terms of the contract, has not completed or fulfilled his responsibilities under the contract calling for a period of obligated service. In this regard defendant has breached his agreement with the NHSC and is liable to the government, according to the governing statute, for three times the amount of financial assistance he received from the government under the scholarship program.

The record in this case reveals that the defendant initially requested a five year deferment, the maximum deferment period under the program, as clearly stated in the contract, was three years. There were certain exceptions to this limit but none were applicable to defendant's situation. The defendant requested a deferment for an orthopedic surgical residency program; the NHSC program only granted deferments in order to complete post-graduate training in primary care specialties, such as family practice, internal medicine, or pediatrics. The NHSC in this case granted this defendant a one year deferment in order to complete a surgical program, conditioned on the inclusion in his program of a primary care component. The defendant failed to include such a component into his program. Defendant claims that he was apprised of these requirements after it was too late and he could not adjust his program. However, Dr. Bills was reinformed of these particular requirements in May 1980, two months prior to the commencement of his program at Rutgers. At no point that year, until November 1980 when he was contacted by NHSC officials and again informed of these conditions of his deferment, did Dr. Bills contact the NHSC to inform them of any difficulty or hardship regarding compliance with the conditions of his deferment. Dr. Bills had prior to this time simply completed the assignment forms sent to him by the NHSC.

It is clear and undisputed that this defendant failed to satisfy the conditions of his deferment as set out by NHSC

officials and begin his period of obligated service. This omission triggers the application of the program's treble damages provision. 42 C.F.R. § 62.10(c). His contention that he was unaware or misinformed by the government regarding the conditions and requirements of his deferment is unsupported by the record in this case. A review of the evidence submitted in connection with this motion reveals no genuine issue of material fact. The clear and unambiguous language of the contract defendant signed when he accepted NHSC assistance imposed on Dr. Bills the obligation to provide medical service in needy areas. As a pre-condition to commencing his period of obligated service this defendant was required to complete certain training and fulfill certain conditions as established by NHSC officials. The imposition of these terms and conditions of deferment are within the authority of NHSC officials. See 42 C.F.R. § 62.9(c). The record is clear that Dr. Bills did not satisfy the conditions of his deferment and he has not completed his period of obligated service. As a result thereof the treble damages provision of the program apply.

Defendant, in response to the government's motion raises additional issues which he feels precludes either the finding of a breach or the entry of summary judgment. First he contends that he is presently working as a researcher under a NRSA award and that he is entitled to credit on his service obligation for the time spent as a researcher. While it is true that the NHSC allows certain participants to fulfill their service requirements by doing research under a NRSA award, see 42 U.S.C. § 254m(e), there is no evidence in this case to indicate that this defendant has applied to the NHSC for such consideration. Defendant, after defaulting on his contract, continued with his five year orthopedic program at Rutgers. Thereafter defendant, apparently on his own, obtained what he claims is an NRSA position. All the while he was contesting the finding of default by the NHSC. He would now like this court to construe his present position as an

NRSA position entitling him to offset his service obligation to the NHSC.

■ The court rejects defendant's argument. The NHSC program does not permit participants after a finding of default to unilaterally enter a NRSA position and claim that he is satisfying his service obligation. Approval for such a course of action must come from the NHSC after the applicant has demonstrated exceptional promise for research. There is no evidence that this defendant has made the requisite showing or complied with NHSC provisions for substituting time spent under NRSA for his service obligation. The only evidence on this issue consists of a letter written by defendant in April 1980 wherein he stated his desire to substitute NRSA in place of service. We note that when Dr. Bills initially applied for a NHSC scholarship he explicitly disclaimed any interest in research and his selection for an award was based on the statements provided by Dr. Bills in his application. There is no showing that a defendant may, after being found in default, unilaterally determine the nature of the service he is to provide in return for his scholarship award. To allow participants this option would vitiate and negate the congressional intent in establishing the program of providing medical care and service in areas currently underserved by medical personnel. The intent and purpose of the NHSC scholarship program is not to provide medical school education to individuals, but rather to improve the delivery of health services in health manpower shortage areas. 42 U.S.C. § 254d(a). This court cannot grant defendant's request for credited service.

Second, defendant seeks summary judgment on the issue of treble damages. Defendant contends that this portion of the contract should not be applied in this case because any breach committed by Dr. Bills approximates a termination of training and not a failure to begin service and that therefore the treble damages section does not apply. Further defendant argues that this provision operates as a penalty which should not be enforced under contract law.

■ We reject as unsupported defendant's argument that defendant's action approximates a termination of training. The applicable statute, 42 U.S.C. § 254o(a), clearly indicates that the failure to complete training provision refers exclusively to the failure to complete academic training and not to post-graduate training. Here there is no dispute that defendant completed his medical school training, therefore this provision, which obligates a participant to repay only the amount received, is not applicable to this defendant under these circumstances. Defendant, having been found to have breached his contract with the NHSC is required to pay treble damages pursuant to Sec. 254o (b).

■ On the issue of enforceability, defendant argues that the damages provision of the NHSC program operates as a penalty, and under contract law is unenforceable. The question of enforceability is one of law to be resolved by this court. *In re United Merchants & Manufacturers, Inc.,* 674 F.2d 134, 141 (2d Cir.1982).

■ Liquidated damages are enforceable where the damages are uncertain in nature or amount or are unmeasurable, such as with government contracts. *Priebe & Sons, Inc. v. United States,* 332 U.S. 407, 411, 68 S.Ct. 123, 125–26, 92 L.Ed. 32 (1947). *See also Finkle v. Gulf & Western Mfg. Co.,* 744 F.2d 1015, 1021 (3d Cir. 1984). We cannot conclude that the damage provision in question is disproportionate to the value of the injury that results from non-performance. *Finkle, supra.* We note that this particular damage provision has been previously upheld in similar litigation. *United States v. Swanson,* 618 F.Supp. 1231 (E.D.Mich.1985). One cannot readily estimate the damages occasioned by the loss of the services of a physician, but we adopt the finding of the *Swanson* court which found that this particular damage provision had a reasonable relationship to the loss suffered by the government, *i.e.,* the loss of a doctor's services in an area determined to be medically underserved. *Swanson, supra,* at 1243–44. The pro-

gram's provisions evidence a reasonable attempt to fix compensation under these circumstances. *Id.* We point out that other statutes containing treble damages provisions, *e.g.,* anti-trust, 15 U.S.C. § 15 and patent, 35 U.S.C. § 284, have been sustained and upheld. We will therefore uphold the validity of the damages provision of 42 U.S.C. § 254*o* (b) and apply it here against a defaulting defendant.

■ We are, though, cognizant of the burdensome nature of this damage provision and contrast it against the laudable and lofty aims of the NHSC program. Congress, when it enacted this provision, did so, not with the intention of extracting financial remuneration from recalcitrant physicians, but rather its goal was to induce NHSC participants to fulfill their contractual obligations. It wanted program participants to perform their obligations and thereby meet what Congress perceived to be a pressing health need in the country. In light of these factors, the court will stay entry of this judgment against the defendant for a period of 30 days in order to allow Dr. Bills to reach an accommodation with the government whereby he will commence to provide services pursuant to the aims of the NHSC program. This opportunity is being granted to avoid the imposition of damages and in order to carry out the intent of the program—providing quality medical care in health manpower shortage regions. Failure of the defendant to reach a satisfactory accord will result in the entry of summary judgment in favor of the government and the imposition of damages calculated pursuant to the formula set out in 42 U.S.C. § 254*o* (b). The court will enter an order consistent with this opinion.