CLOVER SQUARE
ASSOCIATES, Plaintiff,

v.

The NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY, Defendant.

Civ. A. No. 87–2906.

United States District Court,
D. New Jersey.

Dec. 16, 1987.

Robinson, Wayne, Levin, Riccio & LaSala, Newark, N.J., for plaintiff.

Stryker, Tams & Dill, Newark, N.J., for defendant.

## OPINION

CLARKSON S. FISHER, District Judge.

Before the court are cross-motions for summary judgment in this 28 U.S.C. § 1332(a) diversity action. Plaintiff, Clover Square Associates (hereafter "CSA"), has filed this action challenging the validity of various provisions of its mortgages, held by Northwestern Mutual Life Insurance Company (hereafter "Northwestern"), which prohibit prepayment of the mortgages prior to January 1, 1991.

In the first count, plaintiff seeks a declaratory judgment holding the provisions of the mortgages in question to be void as an absolute restraint on alienation, a declaration that the prohibition against prepayment is void and unenforceable, and, finally, a declaration that the plaintiff may convey the property and prepay the mortgages in full.

In the second count, CSA alleges that defendant's actions in attempting to enforce the provisions of the agreements and refusing to allow prepayment rendered plaintiff unable to consummate the sale of the property covered by the mortgages, resulting in the loss of the benefit of its bargain, profits, expenses and attorneys' fees in relation to the aborted closing.

Northwestern has counterclaimed, seeking a declaratory judgment that the mortgage provisions are valid and enforceable and for summary judgment. The parties have presented an "actual controversy" within the meaning of 28 U.S.C. § 2201.

CSA is the owner of the Clover Mall, located in Hamilton Township, New Jersey. In October, 1979, CSA executed two mortgage and security agreements to the Philadelphia National Bank, as mortgagee. These mortgages secured the principal amount of $3,375,000.00 and are a lien on the shopping center.

By virtue of a Buy–Sell agreement among CSA, Northwestern, the New Jersey Economic Development Authority and the Philadelphia National Bank, Northwestern is the current mortgagee on the mortgages.

In December, 1986, CSA attempted to sell the property, with the closing set for December 31, 1986. CSA notified Northwestern of the impending sale and requested a payoff letter setting forth the necessary information so that the mortgages could be fully paid and, therefore, released. Shortly thereafter, Northwestern advised CSA that, pursuant to the terms of the

mortgages, the loan could not be prepaid and the premises could not be sold. Subsequently, a representative of Northwestern advised CSA that, although the mortgage could not be prepaid, Northwestern would recommend to the Northwestern Mutual Life Insurance Tax Exempt Mortgage Trust # 1 that consent be given to the sale of the shopping center. As part of the consent to sale, Northwestern would further recommend that a subordinate debt be placed on the property. The prospective purchaser's lender, however, refused to accept a second mortgage on such a sizeable loan, and the sale of the property did not go forward.

As the parties agree that the facts of this case are not in dispute, summary judgment is appropriate. *United States v. Bills*, 639 F.Supp. 825, 829 (D.N.J.1986). The particular provisions of the mortgages in question state as follows:

> Company [Clover] shall not sell, pledge or otherwise dispose of the pledged property [mortgaged premises] or any part thereof or of the revenues derived therefrom or created or create or suffer to exist any lien or encumbrance thereof, except in accordance with Sections 5.10, 5.11 and 5.12 of the [construction] Loan Agreement and in accordance with Section 2.03 hereof.

The mortgage commitment letter, incorporated by reference into the Buy–Sell agreement, provides:

> 3, *Prepayment in Full:* Borrower shall have the further privilege, on seven days' advance written notice, on any interest payment date, beginning January 1, 1991, of paying the loan in full with a prepayment privilege fee of 5%, said fee reducing 1% per year thereafter, said prepayment privilege to be calculated on the remaining balance of the loan, minus any amounts prepaid during the previous six months.

At the heart of this case is the validity of the mortgage clause which prohibited prepayment. Although the mortgage contains a provision prohibiting the sale of the mortgaged premises, I need not address that for two reasons. First, it appears from the record that Northwestern was inclined to waive that provision; and second, CSA points out that it was unable to sell the property because the buyer's lender "required a first mortgage lien position on the property as a condition precedent to its financing." *See* Flotteran affidavit, paragraph 12. If there is liability in this case, it is because Northwestern refused to accept payment of the mortgages. That question turns on the validity of the prepayment prohibition clause.

In *Bloomfield Sav. Bank v. Howard S. Stainton & Co.*, 60 N.J.Super. 524, 159 A.2d 443 (App.Div.1960), the court held that a mortgagee could extract a fee from the mortgagor for allowing prepayment of the loan. In so holding, the court explained:

> It is merely the exercise of a right to demand a consideration for its acceptance of a request by the defendants for prepayment for which no specific provision existed. For such requested action it had a separate contractual right to require the aforesaid payment "for surrendering the privilege of having its funds invested, and of collecting interest thereon for the term provided in the contract...."

*Id.* at 531–532, 159 A.2d 443, *quoting*, in part, 130 A.L.R. 73, 78–79. *See also Century Fed. Sav. & Loan Assn. v. Van Glahn*, 144 N.J.Super. 48, 52, 364 A.2d 558 (Ch.Div.1976); *Shalit v. Investors' Sav. & Loan Assn.*, 101 N.J.Super. 283, 286, 244 A.2d 151 (Law Div.1968), where the court, in upholding an acceleration clause in a mortgage, stated:

> In the *Bloomfield Savings* case a mortgagee yielded its right to continue the investment of its funds. Here, the mortgagee relinquished its right to call in the full amount of the principal balance for reinvestment at more favorable rates of interest.

*Bloomfield Savings Bank, supra,* and subsequent cases identify a mortgagee's right to preserve the continuation of its investment. The mortgagee must have the corresponding ability to exercise that right. In entering these agreements, Northwest-

ern expressly reserved the right to continue its investment for a specified term of years. In refusing to allow prepayment, and thus extinguishment, of the mortgages, Northwestern merely exercised the rights it had previously sought and obtained in the agreements. Although Northwestern's refusal to allow prepayment of the mortgages may have hindered CSA's ability to sell its property, its exercise of a legitimate right cannot be said to constitute an unreasonable restraint on alienation. Accordingly, Northwestern's motion for summary judgment is granted, and CSA's cross-motion for summary judgment is denied.