THE GUARANTEE COMPANY OF NORTH AMERICA, A CORPORATION OF THE DOMINION OF CANADA, PLAINTIFF, v. TANDY & ALLEN CONSTRUCTION CO., INC., A CORPORATION OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided March 16, 1961.

*Messrs. Smith, Kramer & Morrison (Mr. Kenneth A. Morrison,* of counsel) and *Messrs. Stradley, Ronon, Stevens & Young* (by *Mr. Daniel Mungall, Jr.,* and *Mr. S. Gordon Elkins,* members of the Pennsylvania Bar), attorneys for plaintiff.

*Mr. Bernard Dorfman* (*Mr. Samuel Rochlin*, of counsel, and *Mr. Frederick P. Glick*, of the New York Bar), attorneys for defendant.

SCHNEIDER, J. C. C. The above case was tried on a filed stipulation of facts and on briefs. The facts are set forth here briefly because the issue is limited and presents a legal problem.

Defendant was general contractor for construction of a hangar at Burlington Airport. Defendant entered into a contract with a company known as Industrial Associates, Inc., as subcontractor for certain work on the construction job. Plaintiff furnished a completion and payment bond to subcontractor. The defendant and Industrial Associates also contracted for work on two other large construction jobs, but plaintiff did not bond those jobs, nor were they bonded at all.

On November 14, 1956 a petition in bankruptcy was filed for the subcontractor, Industrial Associates, Inc., and the company was adjudicated a bankrupt. Defendant, at request of plaintiff, completed the work of the subcontractor on the Burlington job and subtracted the cost from money due subcontractor.

The plaintiff paid out, under terms of its bond, $17,956.05 for unpaid labor and materials. There is due the subcontractor on this job from defendant the sum of $9,603.67. Plaintiff seeks recovery of this latter amount from defendant.

The subcontractor defaulted on the other two contracts it had with defendant. As a result there is due to defendant from the subcontractor the sum of $9,937.09. The sole issue is whether defendant may offset the money due it against the amount due the subcontractor, which under the terms of the bond become due to plaintiff, or whether plaintiff gets its money, leaving defendant, on its claim against the subcontractor, to its rights under the bank-

ruptcy law. Defendant filed claims in the bankruptcy court for the money due it under the other two jobs. No payment has been received from that source.

Plaintiff contends that the general contractor is obligated to pay over the funds for the following reasons.

The subcontractor, which defaulted, had an obligation to pay bills for labor and materials before it would be entitled to money due under the contract. The failure to make such payment was a default under the contract, and the general contractor had a right to use contract money to pay claims. The general contractor demanded a surety and this surety discharged the obligation and became subrogated to the rights of the general contractor to the contract balance. This right of subrogation was superior to right of the contractor to set off claims from other unbonded jobs, because the surety was entitled to protection of all undertakings of the general contractor in the subcontract and because claims attempted to be set off are not claims against the surety.

The surety further contends that the subcontractor has assigned contract balances to the surety, of which fact the general contractor was or should have been aware at the time it entered into the two unbonded contracts; and the general contractor may not set off against the surety, as assignee, claims arising from transactions entered into after it knew or should have known of the assignment.

In order to sustain such contentions and conclusions, the surety contends that funds in the hands of the general contractor are a trust fund which must remain intact as security for the claims of the surety, not to be disturbed by any claims of the general contractor arising from other jobs.

There is no question, from the stipulated facts, that the surety is subrogated to the rights of the subcontractor to these funds and would be entitled to receive the funds if this question of setoff had not arisen. There is no question

but that the subcontractor could not demand the funds as long as it was, in turn, indebted to the general contractor for any reason.

The general contractor was obligated to bond his obligations to the Federal Government and, in turn, demanded that the subcontractor bond his obligation to perform and pay his due debts. Having demanded this protection, are we now to find that the subrogation is not to the rights of subcontractor but to the rights of the general contractor, on the theory of subrogation and assignment, and to find that the funds in hands of contractor are trust and security funds? Plaintiff contends that this case involves a narrow issue of the law of security, the security involved being the unpaid balance of the contract price.

On the theory of assignment, plaintiff contends that by the writing and receipt of said bond the general contractor received notice of the assignment prior to the starting of the other jobs from which the setoff claim arose. The notice, they contend, arises from mere existence of suretyship and custom of the trade.

Counsel quotes *St. Peter's Catholic Church v. Vannote,* 66 *N. J. Eq.* 78 (*Ch.* 1904). This case gives a surety the right to funds in the hands of the owner as opposed to claims of materialmen and laborers. *National Surety Corp. v. Barth,* 11 *N. J.* 506 (1953), prevented a setoff because of the creation of a fund as trust money by the statute affecting public housing. This statute was passed to avoid the right of setoff as given in *Grover v. Board of Education of Franklin Tp.,* 102 *N. J. Eq.* 415 (*Ch.* 1928), affirmed 104 *N. J. Eq.* 197 (*E. & A.* 1928), which will be discussed below. See also discussion by Judge Conford in *Picker v. City of Bayonne,* 60 *N. J. Super.* 251 (*App. Div.* 1960). That case also created funds as a trust fund, as did the case of *Goodwillie v. City of Bayonne,* 2 *N. J.* 88 (1949), where the statute required water funds to be placed in a separate account and where the court held that "defendant may not set off a claim unless it arose between the parties

in the same capacity as they are designated in the main action."

Counsel for plaintiff further contends that the general contractor and the surety are in privity, and the inability of the general contractor to setoff against the surety stems directly from the contractual relationships created between them.

A setoff is an offsetting claim arising out of a completely independent and unrelated transaction. *Falkenstern v. Herman Kussy Co.*, 137 *N. J. L.* 200 (*E. & A.* 1948). There is no question of recoupment in this case.

In this case general contractor hired a subcontractor and required a bond to protect the general contractor, assure payment of bills, and assure completion of the work. The surety, for compensation, agreed to protect the general contractor. When a surety pays bills it gains subrogation rights, but it stands in the shoes of the subcontractor, not the general contractor. Counsel for plaintiff insists it stands in the shoes of the general contractor, because the general contractor would be required to assume certain obligations under the Miller Act (Act of Aug. 24, 1935, c. 642; 40 *U. S. C.* § 270, 40 *U. S. C. A.* § 270a). It was because of its contractual obligation with the United States Government and this Miller Act that the general contractor required a surety bond.

The surety obtained rights to money due from the general contractor to the subcontractor, not for the amounts the surety paid out under its bond. What is due from general contractor to the subcontractor is determined by ordinary rules of law.

Plaintiff talks of assignment. There is no automatic assignment until default takes place and payment is made under said default. There execution of the bond does not operate to assign to the surety the rights of the subcontractor while properly performing its obligations.

The court can find no legal or contractual establishment of a trust fund of money due from the contractor to the

subcontractor. The obligation of the general contractor to the subcontractor is an ordinary contractual duty to pay money as and when money becomes due. The contractual provisions quoted make the money in the hands of the subcontractor trust funds for the payment of the subcontractor's obligations.

The only privity of contract between the general contractor and the surety is the obligation of the surety to protect the general contractor, and there is no obligation of the general contractor to the surety except that, upon default and payment, subrogation rights apply to money that may be found to be due from the general contractor to the subcontractor.

In *United States v. Munsey Trust Co.*, 332 *U. S.* 234, 67 *S. Ct.* 1599, 91 *L. Ed.* 2022 (1947) the United States Supreme Court decided a case similar to ours. Counsel for plaintiff has briefed many pages to either explain the difference between the two cases or to show that the United States Supreme Court is incorrect in its decision.

In that case the United States made several contracts with Federal Contracting Corporation for the painting and repairing of federal buildings. The contractor supplied surety bonds. There was an amount unpaid to laborers and materialmen, and these bills were paid by the surety. There was money due on this contract from the United States to the contractor.

The United States executed another contract with the same company and the company defaulted. The United States completed the work, paid out a sum of money, and sought to offset the amount against money due on the first contract. The United States Supreme Court permitted the setoff. The contentions made by the surety in that case were the same as in this case, and were disposed of by the same reasoning as set forth above by this court.

"The government has the same right, 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.' * * * [A]nd

one whose own appropriation and payment of money is necessary to create a fund for general creditors is not a general creditor. He is not compelled to lessen his own chance of recovering what is due him by setting up a fund undiminished by his claim, so that others may share it with him. In fact he is the best secured of creditors; his security is his own justified refusal to pay what he owes until he is paid what is due him.

* * * One who rests on subrogation stands in the place of one whose claim he has paid, as if the payment giving rise to the subrogation has not been made. * * * [W]e are not prepared to apply law relating to security to unappropriated sums which exist only as a claim.

* * * The statutory provisions * * * were enacted for the benefit, not to the detriment of the government. It is the surety who is required to take risk. We have no warrant to increase risks of the government."

In *Grover v. Board of Education of Franklin Tp.,* 102 *N. J. Eq.* 415 (*Ch.* 1928), affirmed 104 *N. J. Eq.* 197 (*E. & A.* 1928), the contractor agreed to build a public school and furnished a surety bond for performance and payment. A claim was filed by a materialman under the Municipal Lien Law. The contractor defaulted, and the surety took over the work. The board of education had $50,000 in its possession, and the surety entered into a contract to finish work for $53,000. The work was completed. The surety wanted the money remaining and objected to payment to the materialman. The court held that creditor could apply payment to whatever debt it selected, and a surety of one of the debts has no superior equity merely because of suretyship.

"* * * a surety is a contingent creditor. If and when he pays the debt which he has guaranteed, he becomes a creditor and stands in the shoes of the creditor whom he paid; but he has no greater rights and there is no reason why he should have. * * * There is no legal or other compulsion on a surety company to enter into such surety bonds; when surety companies do so, they do so for compensation and are at liberty to insist, as a condition to their becoming sureties, upon special agreements or arrangements for their protection."

In New Jersey it has been held that when a corporation is adjudged insolvent and a receiver appointed under the

New Jersey law, and there are funds in an account in a bank, the bank may set off money due to the bank in preference to the rights of receiver. *Shields v. John Shields Const. Co.,* 83 *N. J. Eq.* 21 (*Ch.* 1914); *Rogosin v. City Trust Co. of Passaic,* 107 *N. J. Eq.* 79 (*Ch.* 1930).

It would appear that plaintiff's contention is based on a claim of subrogation right which does not exist in the manner it sets forth; and on a claim of security which does not exist; on a claim of a fund which is not in existence; on an assignment which is not effective in this case. Judgment will be rendered in favor of defendant. A proper form of judgment may be presented.