**RESOLUTION TRUST CORP., as Conservator for Riverside Federal Bank, formerly known as Riverside Savings Bank, S.L.A., Plaintiff,**

v.

**Leon MINASSIAN, Defendant.**

**Civ. A. No. 91–2881.**

United States District Court,
D. New Jersey.

Nov. 6, 1991.

As Amended Nov. 21, 1991.

Gregory R. Haworth, Linda M. Coronato, Cole, Schotz, Bernstein, Meisel & Forman, Hackensack, N.J., for plaintiff.

John A. Rizzo, Brian H. Fenlon, John M. Mavroudis, Oradell, N.J., for defendant.

## OPINION

WOLIN, District Judge.

Before the Court is plaintiff Resolution Trust Corporation's ("RTC's") motion for summary judgment on its foreclosure action and on defendant Leon Minassian's counterclaim. Minassian's cross-motion for partial summary judgment on one count of

his counterclaim is also before the Court. For the following reasons, the RTC's motion will be granted, and Minassian's motion will be denied.

## BACKGROUND

This case arises from two loans made by Riverside Savings Bank ("Riverside") to Minassian in 1987 for two different real estate development projects. The first loan, for $3.5 million, was made to finance the development of a condominium project in Hackensack, New Jersey ("the Hackensack loan"). A second loan, for $1.72 million, was made to finance the renovation and expansion of commercial property in Fairview, New Jersey ("the Fairview loan").

Riverside commenced an action in foreclosure of the Fairview property in the state courts of New Jersey after Minassian had defaulted on the Fairview loan. Minassian asserted a counterclaim against Riverside, which included counts related to the Hackensack loan.

Riverside was subsequently placed in receivership by the RTC, which, pursuant to a Purchase and Assumption Agreement, sold Riverside's assets to Riverside Federal Savings Bank ("Riverside Federal"). The RTC was substituted as a party for Riverside in this action, as a conservator for Riverside Federal. Minassian thereafter removed the action from state court to this Court.

RTC has moved for summary judgment on its foreclosure action, and seeks an order and final judgment of foreclosure. Minassian concedes that he is in default of the Fairview loan, but claims that the Hackensack loan was unenforceable because it was usurious, and that he is entitled to setoff the recoverable amount of the allegedly usurious loan against the Fairview loan. The RTC also contends that it is entitled to summary judgment on Minassian's counterclaim because it is based on theories of recovery cutoff by the *D'Oench, Duhme* doctrine, and on an untenable theory of usury. By way of cross-motion, Minassian asserts that he is entitled to summary judgment on part of the first count of his counterclaim, which alleges that the Hackensack loan was usurious.

## DISCUSSION

Both parties agree that there are no material facts in dispute. Therefore, the motions are ripe for summary judgment. Fed.R.Civ.P. 56(c). Further, Minassian does not oppose the RTC's motion for summary judgment on part of count one and all of counts two, four and five of his counterclaim. Those counts relate to claims based on fraudulent oral agreements or assurances in connection with the two loans, and are clearly barred by the *D'Oench, Duhme* doctrine. *See Adams v. Madison Realty & Development, Inc.,* 937 F.2d 845 (3d Cir. 1991).

### A. *Did Minassian Waive His Right to Setoff and Counterclaim?*

Minassian's opposition to the RTC's motion for summary judgment on the Fairview loan foreclosure action is based solely on a claim of usury with respect to the Hackensack loan. Minassian claims that the Hackensack loan was usurious, and that he is entitled to offset the RTC's liability for usury on the Hackensack loan against his liability under the Fairview loan agreements. Therefore, if no right to setoff exists, the RTC is entitled to summary judgment on the foreclosure action without regard to the merits of Minassian's usury claim concerning the Hackensack loan.

A setoff is a claim "arising out of a completely independent and unrelated transaction," which is asserted to offset liability for another claim. *Guarantee Co. of North America v. Tandy & Allen Construction Co.,* 66 N.J.Super. 285, 289, 168 A.2d 860 (Law Div.1961), *aff'd,* 76 N.J.Super. 274, 184 A.2d 426 (App.Div.1962). Waiver of the right to assert a setoff or counterclaim, therefore, merely prevents a defendant from asserting the unrelated claim as a defense to liability in an action brought against him. It does not extinguish the unrelated liabilities, but merely prevents their assertion as a defense to liability to the plaintiff for an unrelated

debt. Thus, if the waiver is effective, Minassian is not barred from asserting the usury claim, but its assertion will not preclude entry of judgment against him on the foreclosure claim.

The RTC contends that, regardless of the validity of the Hackensack loan usury claim, it is entitled to judgment because Minassian expressly and effectively waived the right to interpose a claim of setoff or a counterclaim in a promissory note signed by Minassian in connection with the Fairview loan. That waiver provides:

> Obligor [Minassian] hereby waives ... the right to interpose any set-off or counterclaim of any nature in any litigation in which the Lender [Riverside] or any obligor shall be adverse parties.

It is clear and unambiguous. Therefore, unless invalid for other reasons, the waiver is enforceable.

■ The validity of contractual waivers of the right of setoff and counterclaim have not been addressed by the courts of New Jersey. New York courts, however, have held that such provisions do not violate public policy and are enforceable unless their enforcement would bar a "viable setoff or counterclaim sounding in fraud." *FDIC v. Borne*, 599 F.Supp. 891, 894 (S.D.N.Y.1984); *accord, Barclays Bank of New York v. Heady Electric Co.*, —— A.D.2d ——, 571 N.Y.S.2d 650 (3d Dep't 1991). This Court predicts that the courts of New Jersey would apply the same principles.

■ Minassian's usury claim cannot be construed as a claim sounding in fraud. Even if the rate of interest charged exceeded a legal limit, there was no deception involved in obtaining Minassian's agreement to pay it. Further, even if the right to setoff or counterclaim asserted by Minassian were based on the fraud of Riverside, as discussed below, it would not be "viable" against the RTC due to the *D'Oench, Duhme* doctrine. Therefore, Minassian may not defeat the foreclosure action by asserting a setoff or counterclaim. Accordingly, summary judgment will be granted on the foreclosure action, and, because Minassian has not disputed the

amount due and owing on the loan, a final judgment will be entered in the amount sought by the RTC.

### B. *Can Minassian Assert a Claim of Usury Against the RTC?*

The RTC and Minassian have cross-moved for summary judgment on the usury claim related to the Hackensack loan. The Hackensack loan agreement provided that Riverside would lend Minassian $3.5 million, and that the term of the loan was from February 27, 1987 to February 27, 1989. Prepayment of the loan was permitted "in whole or in part any time subject to the payment of prepayment fees set forth in the Note." Minassian executed a Promissory Note on February 27, 1987 in connection with the Hackensack loan that provided in relevant part:

> Unless otherwise agreed to in writing by Debtor, this Note may be prepaid in whole or in part, at any time provided that Debtor pays to Lender a prepayment fee and penalty in the sum of $772,-000.00 or in the event the Project consists of more than 36 units such amount equal to $22,000 per unit less the amount of release fee, if any, previously paid for the releases of part of the mortgaged premises and more particularly set forth in the Loan Agreement.

During development of the condominium project and the term of the loan, as Riverside released liens on the individual units that had been sold, Minassian paid a prepayment penalty to Riverside of $22,000 per unit. Minassian contends that the prepayment penalties, together with the interest charged, exceeded the legal limit that could lawfully be charged as interest on a loan. Minassian also contends that the loan was unconscionable, if not usurious.

The RTC contends that, under the *D'Oench, Duhme* doctrine, a claim of usury may not be asserted against it. In support, the RTC cites to *FDIC v. Wood*, 758 F.2d 156 (6th Cir.1985), a case directly on point but not binding on this Court. This issue has not yet been addressed by the Third Circuit.

In *Wood*, the Sixth Circuit held that under the *D'Oench, Duhme* doctrine, the FDIC has the status of a holder-in-due-course. *Id.* at 161. It also held that usury was a defense under Michigan law that could not be asserted against a holder-in-due-course. *Id.* at 160. It therefore held that the defense of usury could not be asserted against the FDIC even when usury was apparent from the face of loan documents if the FDIC lacked actual knowledge of the defense. *Id.* at 161–62.

*Wood* has been overruled in part by the United States Supreme Court's decision in *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). In *Langley*, the Supreme Court held that the validity of defenses against the FDIC should be determined by the plain terms of 12 U.S.C. § 1823(e), which provides that the FDIC and RTC are not bound by any "agreement" that "tends to diminish or defeat the interest" of the corporations unless it is in writing, duly authorized and executed by the lending institution, and is part of the permanent records of the bank. 12 U.S.C. § 1823(e). *Id.* 108 S.Ct. at 403. The Court stated that "[a]n agreement that meets [these requirements] prevails even if the FDIC did not know of it; and an agreement that does not meet them fails even if the FDIC knew." Hence, the holding in *Wood*, that a claim of usury cannot be asserted against the FDIC if it lacked actual knowledge of the claim, even when it is apparent from the face of the loan documents, is no longer good law.

In *Adams v. Madison Realty & Development, Inc.*, 937 F.2d 845 (3d Cir.1991), the Third Circuit discussed at length *Langley*, the *D'Oench, Duhme* doctrine, and § 1823(e). There, the court stated that the Uniform Commercial Code concepts of "holder" and "holder-in-due-course" are "irrelevant" to the determination of the RTC's rights under *D'Oench, Duhme* and § 1823(e). *Id.* at 855. According to the Third Circuit, the RTC's rights after acquiring a failed lending institution must be determined by examining *D'Oench, Duhme*, § 1823(e) and their underlying purposes.

According to the Third Circuit, a purpose of § 1823(e) is to protect the RTC from "collusive reconstruction of loan terms by bank officials and borrowers." *Id.* at 858. By requiring all "agreements" to be written, Congress also ensured that a bank's records would be complete when an insolvent bank is taken over by the RTC, so that "mature consideration" may be made of loan transactions. *Id.* Therefore, the Third Circuit held that even if the bank examiners have actual knowledge of a defense to a loan or claim based thereon, unless the agreement on which the defense or claim is based meets the requirements of § 1823(e), it cannot be asserted against the RTC. *Id.* Thus, when it is not clear from the face of the loan documents that the rate of interest exceeds the legal interest rate, usury cannot be asserted, because there is insufficient documentation of the "agreement" to pay such interest to satisfy § 1823(e). Conversely, when a usury claim is apparent from the face of loan documents that meet the requirements of § 1823(e), this Court believes that it may be asserted against the RTC. *Langley*, 108 S.Ct. at 403. The Court must therefore determine whether it is apparent from the face of the loan documents between Minassian and Riverside that the rate of interest charged was usurious.

Under N.J.S.A. 31:1–1(e)(1), for loans in excess of $50,000 not secured by real property on which is erected six or less dwelling units, "any rate of interest which the parties agree upon" may be taken. This statute, however, is restricted by N.J.S.A. 2C:21–19a, a penal statute which provides that "notwithstanding any law of this state which permits as a maximum interest rate a rate or rates agreed to by the parties ..., an interest rate [on a loan to an individual] which exceeds 30% per annum shall not be a rate authorized or permitted by law." The civil statute that creates a private right of action for usury, N.J.S.A. 31:1–4, allows borrowers to bring an action when "more than lawful interest was taken." Thus, the civil statute clearly incorporates the maximum interest rate established by the criminal statute. Therefore, for Minassian to prove that the Hackensack loan was

usurious, he must establish that the rate of interest exceeded 30%.

Minassian contends that such rate of interest is apparent from the face of the loan documents. The Court disagrees. Determination of the rate of interest depends on factual circumstances that are not reflected in the loan agreement or Note. Under the Note, a set prepayment penalty of $22,000 per condominium unit is required. Under the loan agreement, Riverside agreed to advance to Minassian up to $3.5 million during the term of the loan. To determine whether the effective interest rate exceeded 30% requires knowledge of the dates of the advances, the dates of repayment and the rates of interest charged on the principal. None of these facts are apparent from the loan documents. The amount and timing of the advances apparently were agreed to by the parties during the course of the loan.

It is possible that the interest rate charged exceeded 30%. For example, if Riverside advanced all $3.5 million dollars to Minassian one week before the end of the loan term, and Minassian repaid it, along with the prepayment penalties of $772,000, one week later, the effective interest rate would clearly exceed 30%. Conversely, if Riverside advanced all $3.5 million dollars on the date of the loan agreement, February 27, 1987, and no principal was repaid until the last day of the loan term, February 27, 1989, the $772,000 in prepayment penalties would represent an effective interest rate of 11% for each of the two years. The interest charged on the principal would have had to exceed 19% to combine with the penalty to exceed 30%. Both parties agree that the interest rate charged was between 12–14%.

There was no way for the bank examiners to have determined with any speed or confidence that the loan was usurious. *See Langley,* 108 S.Ct. at 401 (bank examiners must evaluate loans "with great speed, usually overnight in order to preserve the going concern value of the failed bank"). To the extent that advances were made and repaid in such a way as to exceed 30%, these separate "agreements" as to the timing of the advances do not meet the requisites of § 1823(e), and therefore cannot form the basis of a claim against the RTC.[1] For the same reasons, Minassian's claim of unconscionability must also fail.

---

1. Even if the usury claim could be asserted, it would not entitle Minassian to any relief other than recovery of the illegal interest already paid, and relief from an obligation to pay any future interest. When usury is asserted by the borrower as an affirmative claim, N.J.S.A. 31:1–4 applies. Under that statute, a borrower may recover only illegal interest previously paid to the lender. The lender is entitled to retain that portion of legal interest that has been previously paid. *Speare v. Consolidated Assets Corp.,* 367 F.2d 208, 212 (2d Cir.1966) (citing New Jersey caselaw). To the extent there remains any outstanding balance for legal interest, the borrower who establishes usury is not required to repay it. *Id.* Hence, Minassian could at best recover only that portion of the prepayment penalties which, when taken together with the loan interest, exceeded the 30% maximum rate dictated by N.J.S.A. 2C:21–19a. Contrary to his contentions, Minassian would not be entitled to recover legal interest already paid to Riverside on the Hackensack loan.

Further, it is not at all clear under New Jersey law that a prepayment penalty should be considered as interest. There is no right to prepay a mortgage loan secured by real estate consisting of more than six dwelling units. *Lower Main Street Assoc. v. HMFA,* 219 N.J.Super. 263, 270, 530 A.2d 324 (App.Div.1987); N.J.S.A. 46:10B–1, –2 (creating right to prepay loans on real estate consisting of six units or less). When there is no provision in a note giving the borrower a right to prepay the loan, he is obliged to pay the full amount of interest that would have accrued over the complete term of the loan. *Eliasz v. Broadway Bank and Trust Co.,* 33 N.J. 470, 471, 166 A.2d 166 (1960). A lender may charge a penalty to the borrower for the privilege of prepayment because by allowing prepayment, the lender "surrender[s] the privilege of having its funds invested, and of collecting interest for the term provided in the contract." *Bloomfield Savings Bank v. Howard S. Stainton and Co.,* 60 N.J.Super. 524, 532, 159 A.2d 443 (App.Div.1960). No New Jersey case has held that a prepayment penalty may not exceed the present value of interest that would have accrued over the term of the loan. A penalty may be sought not just to compensate the lender for its loss of the future right to interest, but also to compensate for other losses, including, for example, tax benefits that may be lost as a result of the prepayment. Therefore, the prepayment penalty may more properly be seen not as additional interest, but as consideration paid by the borrower to cancel the loan and cut short the lender's right to the interest agreed on.

## CONCLUSION

For the reasons stated above, the RTC's motion for summary judgment on its foreclosure action will be granted and an appropriate order and final judgment will be entered. The RTC's motion for summary judgment on Minassian's counterclaim will also be granted, and Minassian's motion for partial summary judgment on that same claim will be denied.