12 A.3d 264 (2011)
418 N.J. Super. 149
INVESTORS SAVINGS BANK, Plaintiff-Respondent,
v.
WALDO JERSEY CITY, LLC, Powerhouse Land Development, LLC and David Pazden, Defendants-Appellants.
No. A-6201-09T3.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 2010.
Decided February 17, 2011.
*265 Steven J. Eisenstein argued the cause for appellants (Lum, Drasco & Positan, attorneys; Mr. Eisenstein, of counsel and on the brief; Scott E. Reiser, Roseland, on the brief).
Donald E. Taylor argued the cause for respondent (Wilentz, Goldman & Spitzer, attorneys; Mr. Taylor and David H. Stein, of counsel; Mr. Taylor, Mr. Stein and Jay B. Feldman, Woodbridge, on the brief).
Before Judges FISHER, SIMONELLI and FASCIALE.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we reverse an interlocutory order that dismissed defendants' counterclaim; the judge's ruling was based on his enforcement of a contract provision, which proclaimed the party's loan agreement to be "free from any right of setoff, counterclaim or other defense." Because this provision was not intended to extinguish defendants' claimsonly relegate them to a separate suitit conflicts with *266 our rules of procedure and is, thus, unenforceable.

I
Because the counterclaim filed by defendants Waldo Jersey City, LLC, and Powerhouse Land Development, LLC, was dismissed at the pleading stage, we assume for present purposes that their allegations are true. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989); Seidenberg v. Summit Bank, 348 N.J.Super. 243, 249-50, 791 A.2d 1068 (App.Div.2002).
Their allegations reveal that Waldo is the owner of property in Jersey City, and Powerhouse was an entity created to manage construction of residential condominiums on the property. Requiring financing for this multi-million dollar project, Waldo and Powerhouse (defendants) entered into discussions with plaintiff Investors Savings Bank (plaintiff).
On July 10, 2006, plaintiff issued a commitment letter, which was amended a few weeks later, agreeing to provide an initial $1,000,000 for the cost of project drawings, and then: $6,400,000 to discharge an existing lien; $25,800,000 for hard costs, including the drawings; and $2,300,000 for an interest reserve. According to defendants, plaintiff understood that if the loan was not entirely funded, they would be unable to meet their obligations and complete the project. On September 14, 2007, more than a year after the commitment, the parties entered into a loan agreement.
Defendants claim that in the year between the commitment and the loan closing, the residential real estate market in Jersey City "virtually came to a standstill." Appraisals obtained by plaintiff valued the property at approximately $25,000,000 at the time of the commitment; a second appraisal, shortly before closing, approximated its value at $16,700,000. By the time of closing, defendants had incurred more than $1,000,000 in costs on the assumption plaintiff would fully fund the loan. Plaintiff, however, provided less than $8,300,000 at closing and, according to defendants, willfully and inappropriately decided to stop further funding the loan, leaving defendants to bear costs it expected would be funded by plaintiff. In November 2008, plaintiff sought to amend the agreement in order to impose less favorable terms on defendants; plaintiff's proposal was rejected, prompting plaintiff's issuance of notices alleging technical defaults in defendants' obligations.

II
On August 21, 2009, plaintiff commenced an action seeking the foreclosure of its mortgage, and on September 22, 2009, plaintiff filed this separate action, seeking damages in the amount of the entire balance of the loan allegedly due from defendants and the personal guarantor, defendant David Pazden. Defendants filed a counterclaim, alleging, among other things, that plaintiff breached material aspects of the loan agreement in refusing to fully fund the loan.
Plaintiff moved for dismissal of the counterclaim pursuant to Rule 4:6-2(e), chiefly relying on the following provision in the first loan commitment letter:
All documents relating to the Loan must and shall constitute legal, valid and binding obligations of Borrower, enforceable in accordance with their terms and conditions, and free from any right of setoff, counterclaim or other defense.

[Emphasis added.]
In its motion, plaintiff argued that this counterclaim-waiver provisioncontained only in the first loan commitment letter constituted part of the agreement even upon execution of the formal loan agreement,[1] *267 and, along with defendants' agreement to indemnify plaintiff, demonstrated that the parties agreed defendants would not be entitled to assert a counterclaim against plaintiff in this suit. Plaintiff also sought the striking of defendants' jury trial demand based on another provision in the loan documents.
The trial judge granted plaintiff's motion, dismissing the counterclaim with prejudice and striking defendants' jury trial demand. The judge reasoned that the parties' stipulation that the loan documents and their enforcement would be "free from any right of setoff, counterclaim or other defense" constituted a waiver of the right to assert a counterclaim and, even if unenforceable, defendants' agreement to indemnify plaintiff precluded the counterclaim. The judge also held that the clear and unambiguous waiver of the right to trial by jury was enforceable.

III
We granted defendants' motion for leave to appeal and now conclude that: (a) the waiver provision is not enforceable in this setting; (b) the indemnification agreement does not bar defendants' counterclaim; and (c) the jury trial waiver is enforceable. Accordingly, we affirm in part and reverse in part.

A
In their appeal, defendants first argue that the trial judge erred as a matter of law by enforcing their waiver of the right to file and pursue a counterclaim in an action brought by plaintiff on the loan agreement.
The reach of a provision that loan documents would be "free from any right of setoff, counterclaim or other defense" in this State presents a novel question. Plaintiff relies greatlynearly exclusivelyon a series of New York decisions to support its claim that a counterclaim-waiver provision is not against public policy and, with certain defined exceptions, may be enforced. See, e.g., North Fork Bank v. Computerized Quality Separation Corp., 62 A.D.3d 973, 879 N.Y.S.2d 575, 577 (2009); Barclays Bank of N.Y. v. Heady Elec. Co., 174 A.D.2d 963, 571 N.Y.S.2d 650, 653, appeal dismissed, 78 N.Y.2d 1072, 576 N.Y.S.2d 221, 582 N.E.2d 604 (1991); Bank of N.Y. v. Cariello, 69 A.D.2d 805, 415 N.Y.S.2d 65, 65 (1979); see also FDIC v. Borne, 599 F.Supp. 891, 894-95 (E.D.N.Y.1984).[2] These decisions support plaintiff's contention that counterclaim-waiver provisions are enforceable, at least *268 in New York,[3] but do not remotely suggest that they extinguish the waiving party's claims. To the contrary, even in New York, these provisions have been enforced only to the extent they defer the waiving party's assertion of claims to a separate action. In finding they are not contrary to public policy, New York courts have countenanced no great concern about the tendency of counterclaim-waiver provisions to generate multiple suits involving the same transaction or occurrence. Indeed, such a consequence is not inconsistent with New York procedure because all counterclaims are permissive, not mandatory or compulsory, in New York's state courts. See Henry Modell & Co. v. Minister, Elders & Deacons, Reformed Protestant Dutch Church, 68 N.Y.2d 456, 510 N.Y.S2d 63, 502 N.E.2d 978, 980 (1986); 67-25 Dartmouth St. Corp. v. Syllman, 29 A.D.3d 888, 817 N.Y.S.2d 299, 301 (2006). As a result, in New York, state courts have generally enforced counterclaim-waiver provisions with little or no critical analysis.
A quite different approach, however, has been recognized by federal courts applying this New York common law principle. In one action, a federal district court recognized the conflict generated by the application of counterclaim-waiver with the federal compulsory counterclaim rule, Federal Rule of Civil Procedure 13(a), but concluded the counterclaim in question was not compulsory and, therefore, remained viable even if deferred to a separate suit. Banque Indosuez v. Trifinery, 817 F.Supp. 386, 387-88 (S.D.N.Y.1993). A year later, the Court of Appeals for the Second Circuit reviewed a district court's ruling that the counterclaim-waiver provision barred a compulsory counterclaim. Sage Realty Corp. v. Ins. Co. of N. Am., 34 F.3d 124 (2d Cir.1994). In Sage Realty, the landlord relied upon a lease provision that barred its tenant, INA, from "interpos[ing] a counterclaim . . . in any action instituted by [the] Landlord for unpaid rent or additional rent under this Lease." Id. at 126. The Court ascertained that this counterclaim-waiver provision was "never intended. . . to prohibit INA from ever bringing a counterclaim or from seeking redress for its claims, but rather anticipated that INA could bring its claims in a separate action." Id. at 129. The Court also recognized that if the counterclaim-waiver provision was strictly enforced, the later action would be barred because of the tenant's breach of the compulsory counterclaim rule contained in Federal Rule of Civil Procedure 13(a). Ibid. Finding that result inconsistent with the parties' intent to merely defer counterclaims to a later suitand not to extinguish all counterclaimsthe court of appeals held that strict enforcement of a counterclaim-waiver provision was inappropriate. Ibid.
Here, plaintiff agrees there is nothing about the counterclaim-waiver provision that would prohibit defendants' commencement of a separate complaint alleging the same causes of action contained in their counterclaim. Consequently, in considering the counterclaim-waiver provision's enforceability in this jurisdiction, we view the problem no differently than did the court of appeals in Sage Realty. The fact that our procedure is similar to federal procedure, and our rules compel, upon pain of extinguishment, the pleading of counter-claims *269 arising from the same operative facts or transaction in a single suit, Rule 4:7-1, counsels our adherence to the well-reasoned decision in Sage Realty. Quite simply, enforcement of a counterclaim-waiver provision in these circumstances is contrary to the policies contained in our court rules. In recognizing the counterclaim-waiver provision was neither designed nor intended to bar the assertion of the claims in another suit, we view it only for what it then is: a device designed to alter application of our pleading rules in these circumstances.
The essence of our rules governing civil practice is the promotion of efficiency, fairness, and the reduction of needless costs and delay. R. 1:1-2(a). See also Ragusa v. Lau, 119 N.J. 276, 283-84, 575 A.2d 8 (1990); Grow Co., Inc. v. Chokshi, 403 N.J.Super. 443, 457, 959 A.2d 252 (App. Div.2008). One of the bulwarks of our carefully crafted court rules is the notion, described by Justice Brennan, that the judicial process chiefly consists of "a single and complete trial with a single and complete review." Trecartin v. Mahony-Troast Constr. Co., 21 N.J. 1, 6, 120 A.2d 733 (1956). In furtherance of that goal, the rules generally require that a defendant assert in the same action any claims arising out of the same transaction or occurrence that is the subject of an adversary's action. See R. 4:7-1; R. 4:30A. Contrary to these important, time-tested rules, plaintiff would have us enforce a contractual provision that serves no purpose other than to compel defendants to file a separate lawsuit rather than its otherwise appropriate counterclaim. Recognizing that the upshot of the provision's enforcement would be the filing of yet another lawsuitfollowing which sensible case management would compel its consolidation with the action at handthe counterclaim-waiver provision serves no salutary purpose and, worse, convolutes the proceedings and generates additional trouble and expense. As a result, we conclude that enforcement of the counterclaim-waiver provision, when applied in an action by a lender for damages,[4] would be contrary to public policy.
In addition, even were we to find the waiver provision enforceable in this context, we would nevertheless bar its application to a counterclaim that, in essence, asserts the lender's failure to perform the material aspects of the bargain. The common law principle urged by plaintiff carves out two exceptions to its application: counterclaims based on fraud or negligence in the disposition of the collateral. See, e.g., North Fork Bank, supra, 879 N.Y.S.2d at 577.
Plaintiff has not referred us to any decision that has considered or applied such a provision to the assertion of a counterclaim striking directly at the heart of the lender's performance of the agreement as a response to the lender's suit on the agreement. Finding no logic for ruling otherwise, we would view a counterclaim such as that asserted here by defendantsalleging plaintiff's failure to fund the loan as *270 agreedas not so dissimilar to a claim for fraud that it should be treated differently. Considering that the counterclaim-waiver provision seems vestigial to a practice no longer recognized, as it is largely hostile to the pleading requirements of our current court rules,[5] we would broadly view the fraud exception of the common law rule urged by plaintiffeven were we to acknowledge such a common law principleso as to encompass a breach of contract counterclaim alleging the lender's failure to perform its part of the bargain, as asserted here. Plaintiff's claim, which alleges defendants' default on the loan, and defendants' counterclaim, which alleges plaintiff's failure to fully fund the loan, are so intertwined that common sense would compel the creation of an exception for this circumstance from the common law principle urged by plaintiff.
Ultimately, our resolution of this dispute seems no different from that anticipated by plaintiff. If the provision does not preclude defendants' commencement of a separate suit, as plaintiff has acknowledged, then if enforced it merely compels the filing of a separate suit. And, because sensible case management would require the consolidation of that new suit with the existing suit, and the disposition of all these related claims by the same factfinder at the same time, the counterclaim-waiver provision accomplishes nothing. In thus answering the novel question posed in this interlocutory appeal, we conclude that in these circumstances the counterclaim-waiver provision is unenforceable because it conflicts with the public policies of simplicity, efficiency, and fairness that are the bulwarks of our court rules.

B
The trial judge also alternatively concluded that if the counterclaim-waiver provision were not enforceable, the indemnification provision of the loan agreement required dismissal of the counterclaim.[6] We find this holding to be erroneous as well.
It is axiomatic, as Judge Debevoise observed in Travelers Indemnity Co. v. Dammann & Co., Inc., 592 F.Supp.2d 752, 766-67 (D.N.J.2008), aff'd, 594 F.3d 238 (3d Cir.2010), that an indemnification agreement must be based upon "the indemnitee's claim to obtain recovery from the indemnitor for liability incurred to a third party." See also Feigenbaum v. Guaracini, 402 N.J.Super. 7, 18, 952 A.2d 511 (App.Div.2008); Enright v. Lubow, 202 N.J.Super. 58, 85-86, 493 A.2d 1288 (App. Div.1985), certif. denied, 104 N.J. 376, 517 A.2d 386 (1986); Fengya v. Fengya, 156 N.J.Super. 340, 345, 383 A.2d 1170 (App. *271 Div.1978). Accordingly, the indemnity provision here has no application when presented as a shield against claims asserted against the indemnitee by the indemnitor. It is only when the indemnitee is found liable to a third party that the indemnification agreement may be triggered. The judge mistakenly viewed the indemnity provision as having a greater scope than it literally or logically possessed.
Moreover, it bears noting that the indemnity provision was expressly given "[i]n consideration for funding by [plaintiff] of the Loan." Defendants contend that plaintiff failed to fully or properly fund the loanan assertion that the trial judge was required to assume as true in ruling upon the motion to dismiss the counterclaim pursuant to Rule 4:6-2(e). As a result, even if the judge had correctly interpreted the indemnification provision's scope, he was required to assume that defendants had not received the consideration necessary to animate their promise to indemnify plaintiff.[7]

C
Defendants also appeal that part of the order under review that struck their demand for trial by jury. The judge based that part of his decision on the fact that the mortgage and security agreement, as well as the note executed as part of this loan agreement, contain provisionsexpressed in large and bold typethat the parties "waive any and all rights to a trial by jury in any action based upon, or arising out of, or in conjunction with this note, or the mortgage and security agreement and other loan documents executed in connection herewith, or the obligations and indebtedness secured by same."
We find defendants' argument that this waiver is unenforceable to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Indeed, although defendants' brief urged that we grant leave to appeal the judge's striking of the jury demand, defendants have not argued how that waiver is unenforceable here. In any event, to the extent that such an argument may be discerned in defendants' submission, we hold there is no public policy hostile to jury trial waivers, see, e.g., LaManna v. Proformance Ins. Co., 184 N.J. 214, 224, 876 A.2d 785 (2005), and agreements to waive the right to trial by jury are viewed no differently than waivers resulting from the parties' failure to make a jury trial demand in their pleadings, see, e.g., Margolies v. Goldberg, 101 N.J.L. 75, 81, 127 A. 271 (E. & A.1925). Defendants have not asserted that the waiver was involuntary or unknowing, and the record reveals that defendants were represented by counsel in connection with their execution of the loan documents containing the waiver. In the absence of a demonstration that the waiver was involuntary or unknowing, the parties' bold and conspicuous waiver is enforceable and it matters not whether defendants may ultimately prove that plaintiff materially breached the agreement that contained the waiver. Accord Van Syoc v. Walter, 259 N.J.Super. 337, 339, 613 A.2d 490 (App.Div.1992), certif. denied, 133 N.J. 430, 627 A.2d 1136 (1993).

*272 IV
The order under review is affirmed in part and reversed in part. The matter is remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.
NOTES
[1] The loan agreement states that plaintiff's promise to fund the loan "is in accordance with the terms and conditions set forth in the Loan Commitment," and that all the executed documents "shall be construed as one instrument." In addition, the loan agreement defines the "loan documents" as "the Loan Commitment, this Agreement, the Note, any Mortgage and Security Agreement ... [the] General and Continuing Guarantee . . . and any other instrument or document executed in connection with this financing." We thus assume without deciding that the counterclaim-waiver provision survived execution of the formal loan agreement and the closing, even though it is found only in the initial commitment letter.
[2] Plaintiff relies on Resolution Trust Corp. v. Minassian, 777 F.Supp. 385, 388 (D.N.J. 1991), to support its contention that New Jersey would follow New York on this point. There, the court recognized that New Jersey courts had not opined on the subject but predicted our courts would "apply the same principles" as the New York cases. We are not bound by such predictions, In re The Summit & Elizabeth Trust Co., 111 N.J.Super. 154, 166, 268 A.2d 21 (App.Div.1970); see also Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 80, 577 A.2d 1239 (1990), and are not persuaded this unexplained prediction was correct.
[3] We do not mean to suggest this common law rule is known only in New York. Courts of other jurisdictions have recognized and employed it, but not as recently, see, e.g., Tagg v. Bowman, 108 Pa. 273, 277 (1885); Armour & Co. v. Whitney & Kemmerer, Inc., 164 Va. 12, 178 S.E. 889, 893 (1935), or as enthusiastically, see, e.g., N.Y. Factors, Inc. v. George Levine's Sons Co., 348 Mass. 404, 204 N.E.2d 111, 112 (1965) ("assum[ing], without deciding" application of the rule), as the New York state courts.
[4] We are mindful of the possibility that such a counterclaim-waiver provision might be intended as a means of enforcing the limitations on counterclaims existing in foreclosure practice. In that setting, our rules recognize that some counterclaims may not be germane to foreclosure and, therefore, inappropriately lodged in a foreclosure action. See R. 4:64-5. Although the record discloses no reason for its inclusion in the parties' loan documents, the waiver may be a relic of times gone by, where mandatory counterclaims were not the rule and where many types of counterclaims or setoffs were not viewed as germane to certain types of suits. Because the question posed arises in this action for damages, we offer no view as to whether the counterclaim-waiver provision would have been enforceable if defendants had asserted a counterclaim in the pending foreclosure action.
[5] We have already observed without deciding that a counterclaim-provision might be sensibly applied in barring counterclaims in foreclosure actions, as our rules suggest different procedures for those matters. Similarly, the other circumstance in which courts have permitted the enforcement of such a provision are in summary proceedings in tenancy matters, see, e.g., Bomze v. Jaybee Photo Suppliers, Inc., 117 Misc.2d 957, 460 N.Y.S.2d 862, 863 (App.Div.1983); Amazon Mgmt. Corp. v. Paff, 166 Misc. 438, 1 N.Y.S.2d 976, 977 (App.Div. 1938), a circumstance where our rules also limit or exclude the imposition of counterclaims, Rule 4:67-4.
[6] The loan documents contain defendant's promise, "[i]n consideration for funding by [plaintiff] of the Loan," to

unconditionally indemnify, defend, and hold harmless [plaintiff] ... from and against any suits, claims, or demands ... on account of any matter or consequence arising out of the Loan or in connection herewith ... or on account of any act or omission to act by [plaintiff] in connection with the Loan except for [plaintiff's] own gross negligence or willful misconduct.
[7] Plaintiff also argues, as an alternative basis for affirming the order under review, that one of the counts of defendants' counterclaim based on a promissory estoppel theoryfails to state a claim upon which relief may be granted. The trial judge did not reach this argument and neither will we. See Helmy v. City of Jersey City, 178 N.J. 183, 192, 836 A.2d 802 (2003). It may be pursued in the trial court following today's judgment.