**ATLANTIC CITY ASSOCIATES, LLC, Maryland Limited Liability Partnership,**

v.

**CARTER & BURGESS CONSULTANTS, INC, a Delaware Corporation; Keating Building Corporation, a Pennsylvania Corporation**

Carter & Burgess Consultants, Inc., Appellant

Atlantic City Associates, LLC, Maryland Limited Liability Partnership, Appellant

v.

Carter & Burgess Consultants Inc, a Delaware Corporation; Keating Bldg Corp, a Pennsylvania Corporation.

Nos. 09–3124, 10–2033.

United States Court of Appeals, Third Circuit.

Argued: March 17, 2011.

Filed: May 4, 2011.

Steven J. Ahmuty, Jr., Esq. (Argued), Timothy R. Capowski, Esq., Juan C. Gonzalez, Esq., Shaub, Ahmuty, Citrin & Spratt, New York, NY, and Jacob S. Perskie, Esq., Fox Rothschild, Atlantic City, NJ, for Appellant/Cross–Appellee.

Joseph A. Battipaglia, Esq. (Argued), Patrick J. Kearney, Esq., Christina E. Norland Audigier, Esq., Duane Morris, Philadelphia, PA, and Robert L. Byer,

Esq., Susan G. Schwochau, Esq., Duane Morris, Pittsburgh, PA, and Michael W. O'Hara, Esq., Duane Morris, Hamilton, NJ, for Appellee/Cross–Appellant.

Before: BARRY, CHAGARES and ROTH, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

*Atlantic City Associates* ("ACA") hired Carter & Burgess Consultants, Inc. ("C & B") to oversee construction of a development in Atlantic City, New Jersey. Following numerous delays, ACA sued C & B and obtained a total recovery, including attorneys' fees, costs and interest, of nearly $13 million. In this appeal, C & B argues that the District Court (1) failed to apply several clauses in the parties' agreements prohibiting ACA from recovering consequential damages, and (2) failed to enforce an additional clause limiting C & B's total liability to its compensation. We will vacate the judgment of the District Court and remand this case for further proceedings.

## I. Background

### A. Facts

#### 1. The Proposal

On November 15, 2000, C & B submitted a proposal (the "Proposal") to ACA to provide architectural and design services for a mixed-use retail and commercial project called "The Walk." The project consisted of twelve buildings spread over seven city blocks.

Three provisions of the Proposal are relevant to this appeal. First, the Proposal included a clause providing that C & B would not be liable to ACA for any amount in excess of its compensation:

[Section F, Paragraph 1]

To the fullest extent permitted by law, the total liability, in the aggregate, of [C & B] ... to [ACA] ... for any and all injuries, claims, losses, expenses or damages whatsoever arising out of or in any way related to [C & B's] services, the project or this Agreement, from any cause ... including but not limited to, the negligence, errors, omissions, strict liability, breach of contract, misrepresentation or breach of warranty of [C & B] ... shall not exceed the total compensation received by [C & B] under this Agreement.

(A323.)

Second, the Proposal included a clause providing that C & B would not be liable to ACA for consequential damages:

[Section F, Paragraph 4]

Under no circumstances shall [C & B] be liable to [ACA] for indirect, special or consequential damages including but not limited to loss of use, loss of profit, or claims for delay, impact or disruption damages made by [ACA].

(A323.)

Third, the Proposal contained a clause permitting attorneys' fees in the event of a breach:

[Section H]

In the event of a default or breach of this Agreement by [ACA], [C & B's] remedies shall be all those available at law and, in addition, [C & B] shall be entitled to receive, from [ACA], the reasonable legal and/or collection fees, costs, and expenses incurred in connection with curing any breach or default arising hereunder and or/instituting or defending successfully any action or proceeding based upon such default or breach (including the preparation for such actions or proceedings). [ACA] shall enjoy the same rights as [C & B] in

the event of a default or breach of this Agreement by [C & B].

(A324.)

## 2. The Agreements

Following the submission of the Proposal, the parties reached agreement, with their agreement reduced to writing at two different times. The first agreement, dated June 18, 2001, pertained to the majority of the services necessary for the project. The second agreement, dated May 23, 2002, pertained to services necessary to relocate a bus terminal. The legal provisions contained in the two agreements are essentially identical, and we refer to them jointly as the "Agreements."

The Agreements, which provide that they are governed by New Jersey law, contain several relevant provisions. First, the Agreements provide that they incorporate the Proposal, absent a conflict:

1.4.1.3 Other Documents as follows:

(List the other documents, if any, forming part of the Agreement.)

*[C & B's] Proposal dated November 15, 2000, except where it might result in a conflict with this Agreement, and if such conflict exists, this Agreement shall prevail.*

(A224, 407.)

Second, the Agreements contain a mutual waiver of consequential damages:

1.3.6 CLAIMS FOR CONSEQUENTIAL DAMAGES

[C & B] and [ACA] waive consequential damages for claims, disputes, or other matters in question arising out of or relating to this Agreement. This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Paragraph 1.3.8.

(A221, 404.)

Third, under the heading "ERRORS AND OMISSIONS INSURANCE AND INDEMNIFICATION," the Agreements contain the following three paragraphs:

2.9.2.1 [C & B] shall maintain through the period of this Project and for three (3) years thereafter, a standard policy of errors and omissions insurance with an insurance company reasonably satisfactory to the [ACA]. [C & B] shall also maintain insurance coverage for comprehensive general liability, automotive liability and workers' compensation in forms and amounts set forth on Exhibit A hereto . . . .

2.9.2.2[C & B] agrees to indemnify, hold harmless, protect [ACA] . . . against any and all claims, loss, liability, damage, costs and expenses, including reasonable attorney's fees, to the extent caused by the negligent acts, errors, or omissions of [C & B]. . . .

2.9.2.3 All services provided by [C & B] hereunder shall be performed with such reasonable promptness as to cause no delay in the work or in the activities of [ACA], the Construction Manager, or the Contractors, and shall be consistent with the professional skill and judgment which can be reasonably expected from architectural firms of a comparable size performing services similar to those required hereunder for high quality retail and entertainment spaces in the Eastern United States, and [C & B] shall be responsible for all services provided hereunder whether such services are provided directly by [C & B] or the consultants hired by [C & B]. [C & B] shall perform all duties and services and make all decisions called for hereunder promptly and without delay and will give this Project such priority in its office as is necessary to cause [C & B's] services

hereunder to be timely and properly performed.

(A237, 420.)

## B. Procedural History

ACA commenced this action by filing a complaint against C & B on June 27, 2005. ACA later filed four amended complaints, all of which asserted claims against C & B for both breach of contract and professional negligence.

On March 26, 2008, C & B moved for partial summary judgment, seeking a ruling that it was not liable for (1) consequential damages, in light of Section F, Paragraph 4 of the Proposal and Paragraph 1.3.6 of the Agreements, or (2) damages in excess of its compensation, in light of Section F, Paragraph 1 of the Proposal. On November 13, 2008, the District Court issued an opinion that (1) declined to issue guidance as to what types of damages were consequential, and (2) held that because the limitation on damages in excess of compensation in Section F, Paragraph 4 conflicted with Paragraph 2.9.2.2 of the Agreements, it was not incorporated into the Agreements.

On April 13, 2009, C & B filed a motion in limine to bar ACA from introducing evidence of consequential damages relating to loss of use, loss of profit, and claims for delay, impact or disruption. On June 18, 2009, the District Court denied this motion in substantial part.

Following a thirteen-day trial, the jury returned a verdict on July 7, 2009, awarding ACA the following damages:

| | |
|---|---|
| $1,307,073.00 | Additional construction costs to fix errors |
| $3,617,442.00 | Lost rental income |
| $1,688,048.30 | Additional payments to contractors due to delay |
| $ 996,231.00 | Additional administrative costs |

(A24–27.) These damages were awarded on both the negligence and contract claims.

On March 31, 2010, the District Court denied C & B's motions for judgment as a matter of law or for a new trial. In a separate order, it granted ACA's motion for attorneys' fees, costs, and pre-judgment interest—fees in the amount of $2,491,373.50; costs in the amount of $949,311.31; and pre-judgment interest in the amount of $1,653,088.71. These additions brought ACA's total recovery to $12,702,567.82.

## II. Discussion

### A. Jurisdiction and Standard of Review

The District Court exercised subject matter jurisdiction pursuant to 28 U.S.C. § 1332, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. The correct interpretation of a contract is a question of law that we review de novo. *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir.2008).

### B. Availability of Consequential Damages

█ C & B's primary argument is that the District Court erred by allowing ACA to recover consequential damages, which it defines to include $3,617,442.00 of lost rental income, $1,688,048.30 for additional payments to contractors due to delay, and $996,231.00 of additional administrative costs. We agree. Although the District Court correctly determined that C & B was not liable for ACA's consequential damages, its analysis of what damages were consequential was erroneous.

The essence of the District Court's determination was that Paragraph 2.9.2.3 of the Agreements contained an express promise not to delay the project and that any damages following foreseeably from a

breach of that provision were necessarily direct. As the District Court explained in denying C & B's motion for post-trial relief:

When a promise not to delay is breached, it necessarily follows that delay damages may directly result. Likewise, when the contract containing the promise not to delay is for the design of commercial real estate property created solely for the purpose of generating rental income, it necessarily follows that lost rent damages may directly result from a breach. Accordingly, it was appropriate to allow evidence of such damages at trial.

(A49–50.)

But even if it is assumed that Paragraph 2.9.2.3 constituted a promise not to delay the project, as opposed to merely providing a standard of care, damages are not "direct" whenever they are the foreseeable result of a breach. Rather, as we have explained, "New Jersey has adopted the traditional rule of *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145 (1854), that *consequential* damages are available for those delays that may fairly and reasonably be supposed to have been in the contemplation of the parties to the contract at the time it was made, as the probable result of the breach." *Jaasma v. Shell Oil Co.,* 412 F.3d 501, 511 n. 8 (3d Cir.2005) (emphasis added and internal quotation marks omitted). In other words, the fact that damages are foreseeable does not necessarily render them direct. Rather, New Jersey law allows for the recovery of consequential damages when they are foreseeable.

Rather than turning on foreseeability, the difference between direct and consequential damages depends on whether the damages represent (1) a loss in value of the other party's performance, in which case the damages are direct, or (2) collat-

eral losses following the breach, in which case the damages are consequential. *See, e.g.,* Restatement (Second) of Contracts § 347 cmt. c (1981). As the Second Circuit has explained,

Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements. In the typical case, the ability of the non-breaching party to operate his business, and thereby generate profits on collateral transactions, is contingent on the performance of the primary contract. When the breaching party does not perform, the non-breaching party's business is in some way hindered, and the profits from potential collateral exchanges are "lost." . . .

By contrast, when the non-breaching party seeks only to recover money that the breaching party agreed to pay under the contract, the damages sought are general damages. The damages may still be characterized as lost profits since, had the contract been performed, the non-breaching party would have profited to the extent that his cost of performance was less than the total value of the breaching party's promised payments. But, in this case, the lost profits are the direct and probable consequence of the breach.

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.,* 487 F.3d 89, 109 (2d Cir. 2007) (citation omitted). A case on which ACA relies makes the same point:

Direct damages refer to those which the party lost from the contract itself—in other words, the benefit of the bargain—while consequential damages refer to economic harm beyond the immediate scope of the contract. Lost profits, under appropriate circumstances, can be recoverable as a component of either (and both) direct and

consequential damages. Thus, for example, if a services contract is breached and the plaintiff anticipated a profit under the contract, those profits would be recoverable as a component of direct, benefit of the bargain damages. If that same breach had the knock-on effect of causing the plaintiff to close its doors, precluding it from performing other work for which it had contracted and from which it expected to make a profit, those lost profits might be recovered as "consequential" to the breach.

*Penncro Assocs., Inc. v. Sprint Spectrum, L.P.,* 499 F.3d 1151, 1156 (10th Cir.2007) (footnotes omitted).

Because the bulk of the damages sought by ACA were consequential, in the sense that they went beyond the loss in value of C & B's performance, ACA was barred from collecting them pursuant to Paragraph 1.3.6 of the Agreements and Section F, Paragraph 4 of the Proposal. The only damages representing a loss in value of ACA's performance were the additional construction costs necessary to repair the errors, as these were the damages that allowed it recover the value of what it had bargained for under the contract.[1]

### C. Interplay of Paragraph 2.9.2.2; Section F, Paragraph 1; and Section H

Because the substantive recovery to which ACA was entitled was only the approximately $1.3 million of additional construction costs, it is possible that—even after attorneys' fees, costs, and pre-judgment interest are added to this total—

ACA's total recovery will not exceed C & B's total compensation under the contract, which totaled approximately $3.4 million. If that is the case, it will not be necessary to consider Section F, Paragraph 1 of the Proposal, which limits ACA's recovery to C & B's compensation. To the extent that ACA's total recovery exceeds this figure, however, it will be necessary to do so. As we explain, the District Court erred in concluding that Section F, Paragraph 1 did not apply to this action.

### 1. Paragraph 2.9.2.2 Does Not Apply to This Action

■ The District Court reasoned that Section F, Paragraph 1 of the Proposal conflicted with Paragraph 2.9.2.2 of the Agreements, and thus that it was not incorporated. Underlying this analysis was the District Court's conclusion that Paragraph 2.9.2.2 applied to a first-party dispute between ACA and C & B.

When the District Court issued its rulings in this case, several non-precedential decisions of this Court suggested that indemnification clauses might apply to first-party disputes between parties to a contract. *See, e.g., SBA Network Servs., Inc. v. Telecom Procurement Servs., Inc.,* 250 Fed.Appx. 487, 492 (3d Cir.2007). Subsequently, however, decisions from both this Court and the New Jersey Appellate Division have foreclosed any such argument.

In *Travelers Indemnity Co. v. Dammann & Co.,* 594 F.3d 238 (3d Cir.2010), we analyzed the following indemnification clause:

---

1. This conclusion is buttressed by Section F, Paragraph 4 of the Proposal, which provides that consequential damages include but are not limited to "loss of use, loss of profit, or claims for delay, impact or disruption damages." (A323.) *See McNally Wellman Co. v. N.Y. State Elec. & Gas Corp.,* 63 F.3d 1188, 1195 (2d Cir.1995) ("While ordinarily the precise demarcation between direct damages and incidental or consequential damages is an issue of fact, in this case the parties themselves defined the scope of excluded damages in the contract.").

Seller agrees to defend, indemnify and hold harmless Buyer from all claims, actions, losses, damages and expenses resulting from any injury to persons, damage to property or action by any regulatory agency, arising out of or in any way associated with the design, installation, and/or operation of any production formulation, packaging, or support equipment (including equipment owned by Seller, Buyer or Third Parties), used in the production, processing or handling of the product(s) sold hereunder and all raw materials used in the production.

*Id.* at 254 (alteration omitted). Rejecting the argument that the clause could apply to a first-party dispute between parties to the contract, we explained,

Under New Jersey law, we must interpret the parties' contract according to its plain language, by reading the document as a whole in a fair and common sense manner. We must also endeavor to avoid ignoring certain words or reading the contract in such a way as to make any words meaningless. In other words, we must interpret the word "indemnify" in relation to the words "defend" and "hold harmless." When we apply these principles to the clause on which IFF relies, it becomes clear that, just as Dammann cannot "defend" IFF from itself or "hold harmless" IFF for IFF's own wrong, Dammann cannot "indemnify" IFF for IFF's own loss. Put another way, the only sensible reading of that clause evidences a requirement that third-party liability exist for the clause to be triggered. IFF's interpre-

tation impermissibly reads that requirement out of the contract.

*Id.* at 255 (citations, internal quotation marks, and alterations omitted). Similarly, in *Investors Savings Bank v. Waldo Jersey City, LLC,* 418 N.J.Super. 149, 12 A.3d 264 (N.J.Super.Ct.App.Div.2011), the New Jersey Appellate Division explained that "it is axiomatic ... that an indemnification agreement must be based upon the indemnitee's claim to obtain recovery from the indemnitor for liability incurred to a third party." *Id.* at 270 (internal quotation marks omitted). Thus, "[i]t is only when the indemnitee is found liable to a third party that the indemnification agreement may be triggered." *Id.* at 271. Because ACA never pleaded the theory that it was seeking indemnification for third-party losses, Section 2.9.2.2 of the Agreements is not implicated here, and thus Paragraph F, Section 1 of the Proposal is incorporated into the Agreements.[2]

### 2. The Availability of Attorneys' Fees

Because Paragraph 2.9.2.2 does not apply to this lawsuit, the District Court erred in awarding attorneys' fees under that provision. We conclude, however, that attorneys' fees are available to ACA under Section H of the Proposal.

■ The District Court reasoned that Section H was not incorporated into the Agreements because it conflicted with the Agreements' bar on consequential damages. This conclusion is incorrect, however, as attorneys' fees are not properly viewed as a form of consequential damages—or as damages at all. *See, e.g., New*

---

**2.** ACA has also suggested that the limitation on damages was not incorporated into the Proposal because it conflicts with Section 2.9.2.1 of the Agreements, which required C & B to carry insurance in an amount in excess of its compensation. We find this suggestion unpersuasive, both because the

insurance that C & B was required to carry included automotive and workers' compensation insurance and because C & B may simply have determined that it was rational to obtain insurance in excess of its anticipated liability.

*Flyer of Am., Inc. v. Mid–Newark, L.P.,* No. A–4791–08T1, 2010 WL 2794249, at \*6 (N.J.Super.Ct.App.Div. July 6, 2010) (refusing to award attorneys' fees and noting that "attorney's fees are not normally a proper measure of contract damages."). Section H is therefore incorporated into the Agreements and permits ACA to recover its attorneys' fees.[3]

### 3. The Application of Section F, Paragraph 1

Given that Section F, Paragraph 1 is incorporated into the Agreements, should the District Court conclude that ACA would otherwise be entitled to substantive recovery, fees, costs, and interest in excess of C & B's compensation, the question arises as to whether the limitation on damages contained in Section F, Paragraph 1 applies only to substantive recovery, or also to pre-judgment interest and attorneys' fees and costs.

■ We conclude that the attorneys' fees and costs authorized by Section H of the Proposal are not subject to the limitation on damages expressed in Section F, Paragraph 1 of the Proposal, as Section H provides that the prevailing party will be entitled to all remedies at law and, *in addition,* to its fees and costs. Whether pre-judgment interest is subject to the limitation on damages is not clear from the face of the documents, however, and we leave it to the District Court to consider this issue in the first instance should it be necessary for it to do so. In this connection, we would expect the District Court to revisit the issue of the amount of pre-judgment interest, which was awarded based on the $7,608,794.30 judgment that has now, in large part, been set aside.

## IV. Conclusion

The only substantive compensation to which ACA was contractually entitled was $1,307,073.00 for "additional construction costs to fix errors." Additionally, Section F, Paragraph 1 of the Proposal does not conflict with Paragraph 2.9.2.2 of the Agreements, and thus is incorporated into the Agreements. We will vacate the judgment of the District Court and remand this case for further proceedings consistent with this Opinion.[4]

---

3. Given our disposition of this appeal, ACA's substantive recovery will be significantly reduced and the District Court may find it appropriate to revisit the amount of attorneys' fees, and perhaps of costs, that it ordered. Indeed, with reference to attorneys' fees, the District Court, analogizing to contingency fee cases, has indicated that one-third of a substantive recovery is "routinely deemed appropriate" and seemed "eminently reasonable" in this case. (A63.12.)

4. We have considered and rejected ACA's additional arguments, including those raised in the cross-appeal. The only argument requiring any discussion is ACA's contention that it is entitled to consequential damages and damages in excess of C & B's compensation on its tort claim, even if the contract claim is limited for the reasons explained in this Opinion. Critically, however, Paragraph 1.3.6 applies to "consequential damages for claims, disputes, or other matters in question arising out of or relating to this agreement," and Section F, Paragraph 1 applies to "any and all injuries, claims, losses, expenses or damages whatsoever arising out of or in any way related to [C & B's] services, the project or this Agreement." Both clauses are written sufficiently broadly to apply to an extra-contractual tort claim. *Cf., e.g., Battaglia v. McKendry,* 233 F.3d 720, 727 (3d Cir.2000) ("In sum, when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction, and are generally construed to en-

compass claims going to the formation of the underlying agreements.'').